[Cite as *Bacon v. Ohio Dept. of Medicaid*, 2021-Ohio-4537.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STACEY BACON, | : | |
| Appellant, | : | CASE NOS. CA2020-11-112<br>CA2020-11-119 |
| | : | |
| - vs - | | O P I N I O N<br>12/27/2021 |
| | : | |
| OHIO DEPARTMENT OF MEDICAID, | : | |
| Appellee. | : | |

ADMINISTRATIVE APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2017-12-2776

Webster & Associates, Co., LPA, and Geoffrey E. Webster and Mary L. Pisciotta, for appellant.

David Yost, Ohio Attorney General, and Katherine J. Bockbrader, Assistant Attorney General, for appellee.

**BYRNE, J.**

{¶1} Stacey Bacon appeals from a decision of the Butler County Court of Common Pleas, which affirmed an administrative decision issued by the Ohio Department of Job and Family Services ("ODJFS") on behalf of the Ohio Department of Medicaid ("Ohio Medicaid").[1] ODJFS's decision denied Bacon's request for 84 hours of weekly private duty

---

1. As explained below, this is the second time this case has been appealed to our court. *Bacon v. Ohio Dept. of Medicaid*, 12th Dist. Butler No. CA2019-01-017, 2019-Ohio-3226. Because the basic facts have not changed since the first appeal, we have repeated herein paragraphs from our previous decision, with minor modifications where needed to account for subsequent developments or to provide additional clarity.

nursing services on the basis that such services were not medically necessary and Bacon's need for care could be met through homemaker/personal care providers with medication certification and nursing task delegation. Bacon argues that the court failed to independently review the magistrate's decision affirming the agency decision and that the court otherwise erred in affirming the agency decision. We affirm, concluding that the record reflects that the court independently reviewed the magistrate's decision and that the agency decision was not contrary to law.

**Factual Background**

{¶2} Bacon, who is approximately 40 years old, was severely injured in a car accident as a teenager. As a result, she is nonverbal and has diagnoses that include severe traumatic brain injury with severe cognitive deficits and behavioral problems, seizure disorder, use of a gastrostomy tube ("g-tube"), non-psychiatric brain syndrome, hydrocephalus (acquired), Kluver-Bucy Syndrome, organic personality disorder, neurogenic bladder, aphasia and visual agnosia, VP shunt, and severe gait disturbance.

{¶3} Bacon is eligible for Medicaid. Bacon had previously received waiver nursing services under the Transition Developmental Disabilities waiver program.[2] This program permitted Bacon to receive private duty nursing services from a licensed practical nurse acting at the discretion of a registered nurse for 12 hours a day, seven days a week, for a total of 84 hours per week.[3] The Transition Developmental Disabilities waiver program was

---

2. "Waiver nursing services" are those "services provided to an individual who requires the skills of a registered nurse or licensed practical nurse working at the direction of a registered nurse." Ohio Adm.Code 5123-9-39(B)(18).

3. "Private duty nursing" is a "continuous nursing service that requires the skills of and is performed by either a registered nurse (RN) or a licensed practical nurse (LPN) at the direction of a registered nurse. * * * A covered [private duty nursing] visit must * * * be more than four hours in length but less than or equal to twelve hours in length per nurse, on the same date or during a twenty-four hour time period * * *." Ohio Adm.Code 5160-12-02(A).

phased out and in 2017 Bacon was enrolled in the Individual Options waiver program. The Department of Developmental Disabilities ("DODD"), through an interagency agreement with the Ohio Department of Medicaid, administers the Individual Options waiver program.

{¶4} Under the new program, Bacon applied to continue receiving 84 weekly hours of private duty nursing services. As a prerequisite to receiving private duty nursing services under the Individual Options waiver program, an individual must meet certain requirements and must receive private duty nursing services authorization from the Ohio Department of Medicaid or its designee. Ohio Adm.Code 5160-12-02.3(A). The Butler County Board of Developmental Disabilities ("BCBODD") was tasked, pursuant to R.C. 5126.055(A)(1), with performing an assessment and evaluation of Bacon so it could make a recommendation to DODD about whether DODD should approve or deny Bacon's application for private duty nursing services. After completing a nursing task assessment, BCBODD recommended Bacon's application be denied.

{¶5} In March 2017, DODD notified Bacon of the denial of her request for 84 weekly hours of private duty nursing services. Instead, DODD determined that Bacon's needs could be met by providers that do not require nursing licensure. Specifically, DODD found that Bacon's needs could be met through the services of Homemaker/Personal Care ("HPC")[4] providers with medication certifications and nursing task delegation.[5]

---

4. Since 2003, Ohio law has authorized DODD personnel trained as HPC providers to perform certain health related activities and to administer medications, upon completion of required training. *See* R.C. 5123.42. "'Homemaker/personal care' means the coordinated provision of a variety of services, supports, and supervision necessary to ensure the health and welfare of an individual who lives in the community." Ohio Adm.Code 5123-9-30(B)(10). HPC providers may provide "[m]edical and health care services that are integral to meeting the daily needs of the individual such as routine administration of medication or tending to the needs of individuals who are ill or require attention to their medical needs on an ongoing basis." Ohio Adm.Code 5123-9-30(B)(10)(f).

5. A "delegation" is "the transfer of responsibility for the performance of a selected nursing task from a licensed nurse authorized to perform the task to an individual who does not otherwise have the authority to perform the task." Ohio Adm.Code 4723-13-01(B).

**The First State Hearing**

{¶6} Bacon disagreed with DODD's denial of private duty nursing hours and timely requested a state hearing on the decision, as permitted by Ohio Adm.Code 5101:6-3-01(B)(6). In May 2017, an ODJFS hearing officer held an evidentiary hearing.

{¶7} Sara Keller of BCBODD testified and stated that she had completed the nursing task assessment for Bacon. Keller determined that all tasks that had been noted for Bacon's care could be completed by a HPC provider. However, Keller admitted that no one from BCBODD had physically examined Bacon to determine her care needs.

{¶8} Bacon's Mother, Kristy, testified that Bacon's medical condition was not stable and that her needs were "always changing." When she was not at work, Kristy constantly monitored Bacon for seizure activity. Kristy had once administered Bacon's seizure drug, Ativan, and in doing so, had accidentally overdosed her, causing respiratory distress. Kristy noted that Bacon suffered chronic urinary tract infections and that there was a connection between such infections and Bacon's seizures. Kristy reported that the number of seizures Bacon was suffering had been reduced, but that this was due to Bacon receiving a new catheter every two weeks.

{¶9} Vickie Franz, a licensed practical nurse, testified that she had served as Bacon's nurse for six years. In her opinion, Bacon required skilled nursing. Franz described constantly monitoring Bacon for signs of seizure and for any changes that needed to be reported. She also noted that Bacon's shunt was 20 years old, and she assessed it three times daily. Franz would also assess the integrity of Bacon's MIC-KEY button. Franz administered PRN[6] medication as needed per Bacon's doctor's orders, including

---

6. "PRN" medication derives its name from the Latin phrase pro re nata, meaning "as needed." "As-needed medication" is "any medication that is not scheduled to be administered at a routine time, but is given in

- 4 -

administering medication after Bacon experienced a seizure. Franz stated that it was not possible to do what she did without exercising independent nursing judgment.

{¶10} The ODJFS officer subsequently issued a state hearing decision sustaining Bacon's appeal. The state hearing decision found that:

> [BCBODD] ha[d] not identified a qualified, certified homemaker personal care provider trained to meet [Bacon's] need for care; specifically, there [was] no evidence of a qualified waiver aide authorized (both legally and by the county board) to administer PRN seizure medication or otherwise follow seizure protocol. There [were] no physician's orders or current Plan of Care supporting authorization of a waiver aide to provide [Bacon's] care and ensure health and safety.

The state hearing decision directed BCBODD to complete a new face-to-face assessment of Bacon's need for care, "giving due consideration to all available documentation from [Bacon's] physicians and medical providers." BCBODD was also ordered to "identify services which can be provided through homemaker personal care/delegation with medication certification, as well as those which require provision through waiver nursing, in order to ensure [Bacon's] health and safety."

**The Second State Hearing**

{¶11} In compliance with the hearing officer's decision, BCBODD performed a follow-up in-home nursing task assessment with Bacon, Bacon's parents and guardians, her independent LPN provider, and a support coordinator. As a result of this assessment, BCBODD again recommended that Bacon's request for 84 hours of weekly private duty nursing services be denied. DODD agreed, finding that the nursing task assessment "[did] not reflect a complexity of care that require[d] continuous nursing care." DODD informed

---

response to a resident's complaint or expression of discomfort or other indication of a specified condition." Ohio Adm.Code 4723-27-01(C).

Bacon it was terminating the 84 hours of private duty nursing services and replacing it with the services of HPC providers with medication certification and nursing task delegation. Bacon requested a second state hearing.

{¶12} A state hearing officer held a hearing in October 2017. Donna Patterson, a registered nurse who is responsible for nursing authorizations in the nursing waiver program, testified on behalf of DODD. Patterson testified about her review of Bacon's plan of care prepared by her physician, also known as the "485 Plan of Care." This document listed all of Bacon's physician's orders concerning her care, including a list of prescribed medications, both routine and PRN. Patterson had also reviewed nursing logs which depicted the daily activities of Bacon's nurses over two months in 2017. Patterson believed that Bacon's nursing records indicated that the primary services Bacon was receiving from her skilled nursing staff were not nursing tasks, but rather personal care services, including hygiene services, assistance with meal preparation, meal assistance with feedings, assistance with physical therapy, assisting with Bacon's orthotics, and moving Bacon. Patterson believed that any nursing tasks being performed were incidental to the personal services Bacon received.

{¶13} Patterson discussed Bacon's 485 Plan of Care and all its various orders and opined that nearly all of Bacon's medically necessary needs could be met by an HPC provider with Level 1 and Level 2 certification, with specific nurse training for Bacon's needs, along with nursing delegation of certain nursing-specific tasks. To the extent that any task could not be delegated to an HPC provider, then skilled nursing could be arranged as Bacon was entitled to up to 14 hours per week of skilled nursing under a state plan home health service.

{¶14} Patterson further offered that, based on her review of the nursing

documentation, Bacon's condition was not unstable and did not require the level of care necessary for constant skilled nurse monitoring. Patterson confirmed that she had reviewed letters submitted by Bacon's physicians, in which all opined that Bacon needed skilled nursing care. Patterson acknowledged the doctor's recommendations, but stated that from her review of Bacon's nursing records, she could not find support for the conclusion that Bacon was so unstable as to require private duty nursing services.

{¶15} Following the hearing, the state hearing officer issued a decision affirming DODD's decision to deny Bacon's request for private duty nursing services. The hearing officer found that there was no dispute that Bacon required around-the-clock care and noted the physician letters, two of which advised that Bacon should have no less than 16 hours daily of skilled nursing care. However, the hearing officer found that the nursing records did not reflect "medical emergencies, seizures, infections or changes in [Bacon's] condition" that could not be managed by a properly trained and certified HPC provider. The hearing officer further noted that the physicians' letters were "general in nature."

{¶16} The hearing officer specifically noted one physician's letter which indicated that monitoring by a skilled nurse was advised due to a recent change in Bacon's medications. It was revealed during the hearing that the change in medication was to one prescription, Effexor. The hearing officer noted that this monitoring could be accomplished by a properly trained HPC provider under the supervision of a registered nurse or physician. Ultimately, the hearing officer determined that DODD's determination that private duty nursing services were not medically necessary in Bacon's case was supported by the evidence presented at the hearing.[7]

---

7. The decision further indicated that BCBODD's support coordinator had provided Bacon's mother, Kristy, with the names of independent and agency HPC providers who were willing to work as Bacon's HPC staff.

**Administrative Appeal**

{¶17} Bacon filed an administrative appeal with ODJFS.[8] On November 16, 2017, ODJFS issued an administrative appeal decision affirming the state hearing decision, finding that "it is permissible to delegate the activities in question [regarding Bacon's care] to HPC individuals. The new assessment has shown that [Bacon's] condition is stable * * * [and her] needs can be met [through] the HPC providers."

**Appeal to the Common Pleas Court and the Twelfth District Court of Appeals**

{¶18} Bacon appealed the ODJFS decision to the Butler County Court of Common Pleas. A magistrate issued a decision in October 2018 affirming the ODJFS decision to deny Bacon's application for 84 hours of weekly private duty nursing services. The magistrate found that while it was clear from the record that Bacon needs "substantial care," it was also clear that DODD had "fully considered the severity of Ms. Bacon's medical needs and the level of care necessary to meet those needs." The magistrate concluded that the "[a]dministrative [a]ppeal decision * * * challenged by [Bacon was] supported by reliable, probative, and substantial evidence."

{¶19} Bacon objected to the magistrate's decision. She argued that the decision was contrary to law as it permitted HPC providers, as unlicensed personnel, to administer PRN medication when HPC providers were not authorized to do so under Ohio law or by Bacon's 485 Plan of Care. Specifically, Bacon contended that two of her medications, Ativan and Diastat, are controlled substances which make the administration of the

---

8. R.C. 5160.31(B)(2) authorizes the Ohio Department of Job and Family Services to handle the administrative-appeal process for appeals filed in accordance with R.C. 5101.35 on behalf of the Ohio Department of Medicaid. *Cook v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin Nos. 14AP-852 and 14AP-853, 2015-Ohio-4966, ¶ 7, fn.2. *Accord Paczko v. Ohio Dept. of Job & Family Servs.*, 8th Dist. Cuyahoga No. 105783, 2017-Ohio-9024, ¶ 3, fn. 1 ("Although Ohio's Medicaid program is administered by the Ohio Department of Medicaid, the Ohio Department of Job and Family Services acts as the Medicaid department's agent for administrative appeals").

medication nondelegable and prohibited from administration by HPC providers. Bacon also objected to the magistrate's decision on the basis that the magistrate and DODD had failed to give proper deference to the opinion letters of Bacon's treating and examining physicians regarding the medical necessity of private duty nursing services.

{¶20} On October 17, 2018, five days after Bacon filed her objections, and before Ohio Medicaid responded, the common pleas court issued a brief entry adopting the magistrate's decision.[9] Other than stating it was adopting the magistrate's decision in its entirety, the court did not explain its rationale. Bacon appealed to this court and argued that the court erred by failing to conduct an independent review of the magistrate's decision.[10]

{¶21} This court sustained Bacon's argument, holding that the trial court failed to conduct an independent review and failed to rule on Bacon's objections. *Bacon*, 2019-Ohio-3226 at ¶ 20. We specifically noted that the trial court's entry did not mention that objections had been filed or otherwise discuss the merits of the objections. *Id.* We reversed the trial court's adoption of the magistrate's decision and remanded the case so that the trial court could review and rule on Bacon's objections. *Id.* at ¶ 21.

**Post-Appeal Remand**

{¶22} On remand, Ohio Medicaid filed a memorandum opposing Bacon's objections to the magistrate's decision. Bacon subsequently filed a notice of supplemental authority

---

9. The entry stated, in whole, as follows:

> This matter is before the Court upon a Magistrate's Decision filed in this case on October 1, 2018. The Court finds that the Magistrate has issued a Decision, and a copy of the Magistrate's Decision has been filed herein. For the reasons more fully set forth within the Magistrate's Decision, the Court hereby ADOPTS the Magistrate's Decision in its entirety in the manner set forth in the Decision. There is no just reason for delay. IT IS SO ORDERED.

10. Bacon also assigned error to the decision to eliminate her private duty nursing hours.

along with a supporting memorandum. In it, Bacon directed the court to a recent opinion from the Fifth District Court of Appeals, *Sharp v. Ohio Dept. of Job & Family Servs.*, 5th Dist. Licking No. 2019 CA 00047, 2019-Ohio-5397, which she stated addressed an appeal with "facts, evidence and applicable law nearly identical to the case at bar."

{¶23} In July 2020, the trial court held a hearing at which the parties presented oral argument on Bacon's objections. At the onset of the hearing, the court indicated that it had reviewed the written memoranda filed in the case and was specifically interested in hearing the parties' arguments regarding the *Sharp* case. The parties each presented the court with their arguments, and the court questioned each side on the various issues presented.

{¶24} On October 7, 2020, the court issued a decision on Bacon's objections. The decision noted the procedural history of the case and specifically noted Bacon's filing of the supplemental notice with respect to the *Sharp* case. The court then overruled Bacon's objections and adopted the magistrate's decision in its entirety. Bacon appealed, raising two assignments of error.

**Analysis**

{¶25} Assignment of Error No. 1:

{¶26} THE COMMON PLEAS COURT ERRED BY VIOLATING RULE 53.

{¶27} Bacon contends that the trial court's October 7, 2020 entry adopting the magistrate's decision again fails to demonstrate that the court engaged in an independent review. Civ.R. 53(D)(4)(d), "Action on Objections," provides in relevant part,

> [i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.

{¶28} Therefore, "Civ.R. 53(D)(4)(d) imposes a mandatory duty on the trial court to

dispose of a party's timely filed objections to a magistrate's decision." *Lynch v. Lynch*, 12th Dist. Warren No. CA2006-12-145, 2007-Ohio-7083, ¶ 8.

{¶29} Although the court is not required to "address each and every portion of an objection raised by [a] party," the court is required to "*rule* on each objection." (Emphasis sic.) *Pietrantano v. Pietrantano*, 12th Dist. Warren No. CA2013-01-002, 2013-Ohio-4330, ¶ 20. A trial court's failure to rule on objections and to conduct an independent review of the magistrate's decision as required by Civ.R. 53(D)(4)(d) constitutes an abuse of discretion. *Ohio Bar Liab. Ins. Co. v. CCF Dev., L.L.C.*, 12th Dist. Butler Nos. CA2017-12-170 and CA2017-12-175, 2018-Ohio-3988, ¶ 22.

{¶30} "Ordinarily, a reviewing court will presume that the trial court performed an independent review of the magistrate's decision." *Id.* at ¶ 23, citing *Kairn v. Clark*, 12th Dist. Warren Nos. CA2013-06-059 and CA2013-08-071, 2014-Ohio-1890, ¶ 11. The party asserting error has the burden of affirmatively demonstrating the trial court's failure to perform an independent analysis. *Pietrantano* at ¶ 14. That a trial court adopted the magistrate's decision in full does not mean that the court failed to exercise independent judgment. *Id.* "A trial court may adopt a magistrate's decision in whole or in part pursuant to Civ.R. 53(D)(4)(b) so long as the trial court fully agrees with the magistrate's findings 'after weighing the evidence itself and fully substituting its judgment for that of the [magistrate].'" *Kairn* at ¶ 11, quoting *Pietrantano* at ¶ 14.

{¶31} Bacon contends that the court's decision failed to specifically address several issues she raised through her objections, including (1) whether certain Ohio Administrative Code provisions precluded HPC providers in her case, (2) whether HPC providers could administer Bacon's PRN medications and controlled substances, (3) why the letters from her treating physicians were not persuasive evidence of medical necessity for private duty

nursing services, and (4) what evidence the magistrate relied on to find that Bacon was "stable." Bacon also contends that the court failed to address the applicability of the *Sharp* case.

{¶32} Upon consideration, we do not find that Bacon has affirmatively demonstrated that the trial court failed to conduct an independent review of the magistrate's decision and failed to rule on her objections. The trial court's entry summarized the procedural posture of the case, including specifically noting that Bacon had filed objections to the magistrate's decision and that the matter had been remanded by this court for "additional consideration" of Bacon's objections. The court noted that Ohio Medicaid had since filed its memorandum supporting the magistrate's decision and that Bacon had filed a notice of authority, with a specific citation to the *Sharp* case. The court additionally observed that it had held an oral hearing on the objection, at which counsel for both parties were present. The court then stated,

> After a full consideration of the record and of the briefings by counsel in the case, and after an oral hearing of the matter * * * the Court hereby **OVERRULES** [Bacon's] Objections, and **ADOPTS** the Magistrate's Decision in its entirety for the reasons more fully set forth within the Magistrate's Decision.

{¶33} We can presume that the trial court conducted an independent review of the magistrates' decision and ruled on Bacon's objections based on (1) the post-remand filings by both parties, (2) the oral argument hearing at which the court and parties discussed at length the issues raised in the objections, and (3) the court's entry. Unlike the trial court's October 17, 2018 entry, the court's October 7, 2020 entry specifically noted that Bacon had filed objections, and specifically overruled those objections after a "full consideration" of the filings and oral argument.

{¶34} Bacon also cites *Stowe v. Chuck's Automotive Repair, L.L.C.,* 9th Dist.

- 12 -

Summit No. 29017, 2019-Ohio-1158, which she effectively argues demonstrates the minimal amount of legal analysis required in a trial court decision to allow a court of appeals to find that the trial court conducted an independent review. In that case, the Ninth District Court of Appeals found that the municipal court's entry reflected an independent review, noting that the entry referred to testimony not referenced in the magistrate's decision and observing that the court struck a finding of the magistrate. *Id.* at ¶ 9. Bacon argues that the entry issued by the trial court in this case is devoid of any similar analysis indicating an independent review.

{¶35} We do not find that *Stowe* compels the result Bacon seeks. Reference to evidence and legal analysis is not required to demonstrate compliance with Civ.R. 53(D)(4)(d). *See Hampton v. Hampton*, 12th Dist. Clermont No. CA2007-03-033, 2008-Ohio-868, ¶ 17. While discussion of evidence and legal analysis in the October 7, 2020, entry would certainly have further supported our conclusion that the trial court engaged in an independent review, the fact that neither is included in the entry does not affirmatively demonstrate that the trial court failed to conduct an independent review.

{¶36} After oral argument in this court, Bacon filed two notices of supplemental authority asking us to consider two recently decided cases, *Scalise v. Johnston Invests., L.L.C.*, 9th Dist. Summit No. 29383, 2021-Ohio-2916, and *State ex rel. Crilley v. Lowellville Bd. of Edn.*, 7th Dist. Mahoning No. 20 MA 0128, 2021-Ohio-3333. Bacon argued that *Scalise* and *Crilley* support her first assignment of error. Bacon is incorrect regarding both cases.

{¶37} In *Scalise* the Ninth District held that the trial court failed to complete the review required by Civ.R. 53(D)(4)(d). The Ninth District reached this conclusion because the trial court included language in its entry indicating it had only examined the magistrate's

findings of fact and conclusions of law to determine if they were sufficient to allow the trial court to review the objections to the magistrate's decision; the entry did not include any language indicating that the trial court had completed its own review as required by Civ.R. 53. *Id.* at ¶ 21. The trial court also inaccurately cited Civ.R. 53(D)(4)(c), rather than Civ.R. 53(D)(4)(d). *Id. Scalise* is not applicable here because the trial court's decision in this case does not include the same type of problematic language.

{¶38} Bacon's reliance on *Crilley* is similarly misplaced. There, the trial court's adoption of the magistrate's language was problematic because the magistrate merely cited the relevant statutory language without offering any analysis. Therefore, neither the magistrate's decision nor the trial court's decision contained any analysis regarding the question before the court. Such is not the case here.

{¶39} This case is more like our case in *Ohio Valley Associated Bldrs. & Contrs. v. Rapier Elec., Inc.*, 12th Dist. Butler Nos. CA2013-07-110 and CA2013-07-121, 2014-Ohio-1477. There, the appellant claimed that because the trial court summarily dismissed its objections, "no review of any objection happened * * *." *Id.* at ¶ 29. We disagreed, noting that the trial court held a hearing on the objections and heard arguments from both parties regarding each of the objections. Additionally, the court noted that it had carefully reviewed the decision of the magistrate, the filings of the parties, and the transcript of the proceedings. *Id.* Similarly, the trial court in the case before us held a hearing on the objections and its decision indicated it considered the record, the parties' filings on the objections, and the arguments presented at oral hearing.

{¶40} For the reasons stated above, the record contains sufficient indicia of an independent review pursuant to Civ.R. 53(D)(4)(d). We overrule Bacon's first assignment of error.

{¶41}  Assignment of Error No. 2:

{¶42}  THE TRIAL COURT ERRED IN AFFIRMING APPELLEE'S ELIMINATION OF BACON'S PDN HOURS.

{¶43}  Bacon argues that the trial court erred in affirming the ODJFS decision denying her request for 84 weekly hours of private duty nursing services.  She divides her argument into three issues, described below.

{¶44}  Before addressing Bacon's three issues, we note what Bacon does *not* challenge on appeal.  The magistrate's decision (as adopted by the trial court) concluded that the state hearing officer's determination was "supported by reliable, probative, and substantial evidence" when it found that most of the tasks required for Bacon's daily care are "lower level tasks" not requiring private duty nursing services.  These tasks included meal preparation, meal assistance with feedings, assistance with physical therapy, assisting with Bacon's orthotics, and moving Bacon.  Bacon does not argue that the decision erred in this respect.  Instead, Bacon's issues presented for review focus on two specific prescribed medications and the level of deference applied to the opinions of Bacon's treating physicians.

First Issue<br>485 Plan of Care and Independent Nursing Judgment

{¶45}  In her first issue presented for review, Bacon argues that "Ohio law precludes unlicensed DODD personnel [that is, HPC providers] from administering PRN medication unless the physician's order is written to preclude independent judgment."  As previously explained, "PRN medication" refers to medication that is prescribed to be used on an "as needed" basis.  In making her argument regarding PRN medications, Bacon only references

two specific prescribed medications: Ativan and Diastat. [11]

{¶46} Both Ativan and Diastat were prescribed with respect to Bacon's seizures. The 485 Plan of Care's instruction for administering Ativan states: "Ativan 0.5 mg give 1 tablet per g-tube four times daily." Per this instruction, Ativan is administered in tablet form via Bacon's gastrostomy tube on a strict schedule of four times daily. The 485 Plan of Care's instruction for administering Diastat states: "Diastat 20mg syringe rectal gel give rectally for seizure lasting >2 minutes PRN." Diastat, unlike Ativan, is a gel that is to be administered topically via the rectum.

{¶47} A statute, R.C. 5123.42, authorizes HPC providers to administer certain prescribed medications if they have completed certain training and certification. The statute provides that "[w]ith nursing delegation, [HPC providers] may administer prescribed medications through gastrostomy and jejunostomy tubes, if the tubes being used are stable and labeled." R.C. 5123.42(C)(3)(d). Virtually the same language is repeated at Ohio Adm.Code 5123:2-6-03(C)(3)(b)(i). Because Bacon's 485 Plan of Care states that Ativan is to be administered to Bacon via gastrostomy tube, R.C. 5123.42(C)(3)(d) and Ohio Adm.Code 5123:2-6-03(C)(3)(b)(i) authorize a properly certified HPC provider to administer Ativan to Bacon via her g-tube so long as the task was delegated by a nurse. This conclusion is supported by Patterson's testimony at the second state hearing. Patterson testified that because of her g-tube, Bacon required an HPC provider with Level 1 and Level 2 certification, along with registered nurse task delegation.

{¶48} The statute also provides that "[w]ithout nursing delegation, [HPC providers] may administer oral and topical prescribed medications * * *." R.C. 5123.42(C)(3)(b). The

---

11. PRN medications are prescribed to be used "as needed." But the 485 Plan of Care states that Ativan is to be administered to Bacon in a predetermined dosage a fixed number of times per day. Therefore, Ativan is not a PRN medication as prescribed to Bacon. We will nevertheless include Ativan in our analysis.

Ohio Revised Code does not define "topical prescribed medications" as used in the statute. However, virtually the same language found in R.C. 5123.42(C) is repeated in Ohio Adm.Code 5123:2-6-03(C)(3)(a)(ii). The applicable definitions section, Ohio Adm.Code 5123:2-6-01(RR), defines "topical prescribed medication" as "any prescribed medication that is applied to the outer skin and drops applied to the eye, ear, or nose" and as also including "transdermal prescribed medication or vaginal or rectal suppositories." Because Bacon's 485 Plan of Care appears to require that Diastat be administered in a gel form topically via the rectum, the prescription appears to fall within the definition of "topical prescribed medication" in Ohio Adm.Code 5123:2-6-01(RR).

{¶49} The record is not entirely clear on this point. However, the magistrate's decision referenced R.C. 5123.42's authorization of HPC providers to administer medications, Bacon did not object to the magistrate's reliance on R.C. 5123.42, and on appeal Bacon does not argue that the statute does not apply and did not point to anything in the record indicating that R.C. 5123.42 does not authorize HPC providers to administer Diastat. On the contrary, Bacon conceded that Diastat falls within the class of medications covered by R.C. 5123.42(C)(3)(b) when she stated that "R.C. 5123.42(C)(3)(b) does authorize aides, without nursing delegation, to 'administer oral and topical prescribed medications and topical over-the-counter musculoskeletal medications'" before arguing that the statute does not control because former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) is a more specific, later-adopted regulation (an argument we address below). Given that there is some support in the record for the conclusion that the administration of Diastat is authorized by R.C. 5123.42(C)(3)(b) and given that Bacon did not object to this conclusion below or on appeal and effectively concedes as much, we assume that HPC providers are authorized to administer Diastat to Bacon by R.C. 5123.42(C)(3)(b) and Ohio Adm.Code

5123:2-6-03(C).[12]

{¶50} To summarize, a properly certified HPC provider may administer Diastat without nursing delegation pursuant to R.C. 5123.42(C)(3)(b) and Ohio Adm.Code 5123:2-6-03(C)(3)(a)(ii), and may administer Ativan with nursing delegation pursuant to R.C. 5123.42(C)(3)(d) and Ohio Adm.Code 5123:2-6-03(C)(3)(b)(i).

{¶51} While Bacon acknowledges R.C. 5123.42, she argues that HPC providers cannot administer Ativan and Diastat to her as PRN medications because her 485 Plan of Care requires the exercise of independent nursing judgment in conjunction with administering these medications. Former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) states that HPC providers are barred from administering PRN medication "unless the order is written with specific parameters which preclude independent judgment."[13] *Id.* However, Bacon ignores the overall context of the regulation in which this language appears. Rather than imposing a rule that HPC providers may not administer medication if doing so involves "independent judgment," the regulation simply describes the *content of training* that is to be provided to HPC providers. In context, the regulation states:

> (B)   Training programs for developmental disabilities personnel
>
> (1)   Health-related activities and prescribed medication administration training program

---

12. The 485 Plan of Care suggests Diastat is applied topically to the rectum. Some record testimony implies Diastat is inserted into the rectum in gel form. The word "suppository" does not appear in the record. However, various dictionary definitions of "suppository" agree that a suppository dissolves and is absorbed by the body after insertion into the rectum. *See, e.g.*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/suppository; Dictionary.com, https://www.dictionary.com/browse/suppository (same); Cambridge Dictionary, https://www.dictionary.cambridge.org/dictionary/English/suppository (same) (all accessed December 11, 2021). This seems consistent with the limited record testimony suggesting that Diastat is inserted into the rectum before being absorbed by the body. Even if Diastat is inserted into the rectum, Diastat is a gel that operates to dispense the prescribed medication in the same manner as a traditional suppository; i.e., it is dissolved and absorbed into the blood system after being inserted anally.

13. Ohio Adm.Code 5123:2-6-06(B)(1) was repealed effective January 14, 2021. Portions of the former code provision, including an identical version of the cited subsection (xx) on which Bacon relies, now appear at Ohio Adm.Code 5123-6-06. We will refer to the relevant regulatory language by the former citation.

(a)    A health-related activities and prescribed medication administration training program provided pursuant to this rule, to prepare developmental disabilities personnel to perform health-related activities, administer oral prescribed medication, administer topical prescribed medication, administer topical over-the-counter musculoskeletal medication, and administer oxygen and metered dose inhaled medication, shall be at a minimum a fourteen-hour course; one hour equals sixty minutes of classroom instruction.

* * *

(c)    The health-related activities and prescribed medication administration training program shall address:

* * *

(xx) Limitations with respect to "as needed" (or "PRN") prescribed medication, which state that developmental disabilities personnel shall not administer a prescribed medication ordered by a physician or other licensed health professional authorized to prescribe drugs when the prescribed medication is to be administered as needed, unless the order is written with specific parameters which preclude independent judgment.

Former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx).

{¶52} Bacon's reliance on former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) is misplaced.  The plain text of the regulation mandates that certain content be included in the training of HPC providers, and that content includes a reference to HPC providers not administering PRN medication "unless the order is written with specific parameters which preclude independent judgment."  However, the regulation does not itself impose this rule regarding "independent judgment."  Nor does Bacon direct our attention to any provision of the Ohio Revised Code or the Ohio Administrative Code imposing any limitation on HPC providers' administration of PRN medications that fall within the authorizations of R.C. 5123.42 or Ohio Adm.Code 5123:2-6-03.  While former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) suggests that HPC providers are not permitted to exercise "independent

judgment" in administering PRN medications, the statutory or regulatory basis for this assertion is unclear. If we were to adopt Bacon's interpretation of the former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) we would effectively be amending the regulation by converting it from what it is – that is, an instruction regarding the content of training – and changing it into a regulation imposing a limitation on HPC providers. We may not simply rewrite regulations in this manner. *See Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 20 (holding that "a court may not rewrite the plain and unambiguous language of a statute * * *"). In our review of case law, we found zero cases holding or even suggesting that former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) imposes the "independent judgment" rule regarding PRN medications that is urged by Bacon. We therefore find that former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) is inapplicable to this case.

{¶53} In addition to misreading former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) as imposing an "independent judgment" rule that the regulation does not impose, Bacon argues that R.C. 5123.42 and former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) conflict, and that because "R.C. 5123.42 was last amended 10/12/16 and former OAC 5123:2-6-06(B)(1)(b)(xx) became effective 11/6/17 * * * the specific regulation precluding aides from administering PRN medications was adopted later and R.C. 1.51 dictates the lower court defer to the special provision." Bacon correctly quotes R.C. 1.51 as setting forth the rule of statutory construction that "If a general provision conflicts with a special or local provision * * * [and] is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." However, Bacon misapplies this rule of statutory construction, which applies when analyzing the conflict between a more general statute and a more specific statute. Even if Bacon were correct that the former Ohio Adm.Code 5123:2-

6-06(B)(1)(b)(xx) imposed the "independent judgment" rule on which she relies, Bacon would still be incorrect in arguing that a later-enacted more specific regulation necessarily prevails over an earlier-enacted more general statute. In fact, a regulation may not supersede, modify, or restrict a statute. *State ex rel. Celebrezze v. Natl. Lime & Stone Co.*, 68 Ohio St. 3d 377, 382 (1994) ("[A]n administrative rule that is issued pursuant to statutory authority has the force of law unless it is unreasonable or conflicts with a statute covering the same subject matter"), citing *Youngstown Sheet & Tube Co. v. Lindley*, 38 Ohio St. 3d 232, 234 (1988). Bacon's argument that former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx) supersedes the clear language of R.C. 5123.42 is without merit.

{¶54} Bacon argues that *Sharp*, 2019-Ohio-5397, is on point and requires that we hold that the administration of Bacon's seizure medications required the exercise of independent nursing judgment and therefore requires that she receive her requested 84 hours of weekly private duty nursing services. In *Sharp*, the Fifth District examined whether R.C. 5123.42 permitted an HPC provider, with nursing delegation, to administer insulin to a Medicaid patient. *Id.* at ¶ 31-40. The Fifth District specifically examined former R.C. 5123.42(C)(1)(e), which provided that "with nursing delegation, developmental disabilities personnel may administer *routine* doses of *insulin* through subcutaneous injections, inhalation, and insulin pumps." (Emphasis added.) *Id.* at ¶ 33. The central issue in *Sharp* was whether the Medicaid patient's insulin doses were "routine."

{¶55} The evidence in *Sharp* reflected that the patient suffered from Type I diabetes and experienced "frequent and wide" fluctuations of glucose levels, which required continual monitoring. *Id.* at ¶ 15. The patient's nurses made modifications to his insulin doses based upon monitoring many different factors, including glucose readings, amount of food consumed, activity levels, and alarms triggered by the insulin pump. *Id.* at ¶ 40.

The adjustments of insulin dosing occurred in "real time." *Id.* On these facts, the Fifth District found that the administration of insulin was not "routine" and required the judgment of a licensed nurse, and that nursing delegation of the task was therefore impermissible under R.C. 5123.42(C)(1)(e). *Id.*

{¶56} *Sharp* does not address or cite the statutory and regulatory sections at issue here, namely R.C. 5123.42(C)(3)(b) and (d), and Ohio Adm.Code 5123:2-6-03(C)(3)(a)(ii) and (b)(i). These statutory and regulatory provisions do not limit HPC personnel to administering "routine" doses of medication, as does R.C. 5123.42(C)(1)(e), the provision at issue in *Sharp*. Nor does *Sharp* address Bacon's argument regarding "independent judgment" under the former Ohio Adm.Code 5123:2-6-06(B)(1)(b)(xx), or even cite that regulation. *Sharp* is irrelevant to this case.

{¶57} For these reasons, and upon our review of the record, we find that the administration of Ativan and Diastat by HPC providers is permissible under R.C. 5123.42 and the related regulations. Bacon's argument that HPC providers may not administer Ativan and Diastat because doing so requires the exercise of independent judgment and discretion is without merit.

Second Issue
HPC Administration of Controlled Substances

{¶58} In her second issue presented for review, Bacon argues that Ativan and Diastat are both controlled substances under Ohio law and the administration of controlled substances is non-delegable as a matter of law.

{¶59} In support of this argument, Bacon cites two statutes within R.C. Chapter 4723, which sets forth the laws applicable to nurses and the Board of Nursing. First, Bacon cites R.C. 4723.48, which provides that "[a] clinical nurse specialist, certified nurse-midwife, or certified nurse practitioner * * * may delegate to a person not otherwise authorized to

administer drugs the authority to administer to a specified patient a drug, unless the drug is a controlled substance * * *."[14] Second, Bacon cites R.C. 4723.489, which similarly provides that "[a] person not otherwise authorized to administer drugs may administer a drug to a specified patient if all of the following conditions are met: * * * [t]he authority to administer the drug is delegated to the person by an advanced practice registered nurse who is a clinical nurse specialist, certified nurse-midwife, or certified nurse practitioner [and] [t]he drug * * * is not a controlled substance * * *."

{¶60} Bacon did not raise this argument either in the administrative proceedings or before the magistrate. She raised it for the first time in her objections to the magistrate's decision. Bacon's failure to raise this argument during the administrative proceedings constitutes a waiver of the argument. *Sammor v. Ohio Liquor Control Comm.*, 10th Dist. Franklin No. 09AP-20, 2009-Ohio-3439, ¶ 25; *MacConnell v. Ohio Dept. of Commerce*, 10th Dist. Franklin No. 04AP-433, 2005-Ohio-1960, at ¶ 21; *Tipton v. Woltz*, 9th Dist. Summit No. 22722, 2005-Ohio-6989, ¶ 8 ("the failure to raise an issue before an administrative board operates as a waiver of that issue later in the appeal process"). As a result, we need not consider this argument further.

{¶61} Even if Bacon had not waived her argument that the administration of Ativan and Diastat is prohibited because they are controlled substances, we would find Bacon's argument meritless because R.C. 4723.48 and 4723.489 are inapplicable to HPC providers because both statutes only apply to "a person not otherwise authorized to administer drugs." HPC providers are authorized to administer drugs by other provisions of the Revised Code. Specifically, under R.C. 5123.41 thru 5123.47, HPC providers with DODD certification are

---

14. Bacon also cites Ohio Adm.Code 4723-13-05(C), the relevant code provision promulgated under R.C. 4723.48.

authorized to administer prescribed medications, with or without nursing delegation. R.C. 4723.48 and 4723.489 therefore do not bar HPC providers from administering Ativan or Diastat.

{¶62} Our conclusion is bolstered by the very regulations issued to implement R.C. 4723.48 and 4723.489. Ohio Adm.Code 4723-13-02(B), which is titled "General Information" and applies generally to the R.C. Chapter 4723 regulations, states:

> (B) Nothing in this chapter shall be construed to prevent any person registered, certified, licensed, or otherwise legally authorized in this state under any law from engaging in the practice for which such person is registered, certified, licensed, or authorized.
>
> *"Otherwise legally authorized" may include, but is not limited to,* authorization for medication administration pursuant to section 3313.713 of the Revised Code, *DODD personnel authorized to perform tasks or activities pursuant to sections 5123.41 to 5123.47 of the Revised Code*, and individuals authorized to administer medications or perform tasks pursuant to Title 47 of the Revised Code.

(Emphasis added.) Ohio Adm.Code 4723-13-02(B) makes clear that HPC providers licensed under R.C. Chapter 5123 are not persons "not otherwise authorized to administer drugs," and therefore R.C. 4723.48 and 4723.489 do not prevent nurses from delegating administration of Ativan or Diastat to HPC providers. This is consistent with the plain language of the relevant statutes in R.C. Chapters 5123 and 4723. It is also consistent with R.C. 4723.071, which provides that the Board of Nursing:

> shall adopt rules as it considers necessary to govern nursing delegation as it applies to developmental disabilities personnel who administer medications and perform health-related activities pursuant to the authority granted under section 5123.42 of the Revised Code. *The board shall not establish in the rules any requirement that is inconsistent with the authority of developmental disabilities personnel granted under that section.*

(Emphasis added.) The implication of this statute is that the General Assembly specifically

intended that the rules governing the Board of Nursing should not conflict or limit the specific statutory authorizations for DODD personnel set forth in R.C. Chapter 5123.

{¶63} We further observe that R.C. 4723.48 and 4723.489 appear limited to certain categories of advanced practice registered nurses who have prescriptive authority, suggesting that this section was not intended to have any impact on a registered nurse delegating statutorily authorized tasks pursuant to R.C. Chapter 5123. Finally, R.C. 4723.489(F) requires the advanced practice registered nurse to be "physically present at the location where" the delegated medication is administered. Interpreting this statute to require a registered nurse to be physically present during an HPC provider's service would render the HPC provider entirely superfluous and would be inconsistent with the system for delegation to HPC providers outlined in R.C. Chapter 5123.

{¶64} Bacon also argues that a nurse, prior to delegating, must make specific determinations required by Ohio Adm. Code 4723-13-05(6)(a)-(f). She cites testimony suggesting that those determinations could not be made with respect to Bacon. This argument is meritless for the reasons just outlined, including Ohio Adm.Code 4723-13-02(B)'s clarification that the R.C. Chapter 4723 regulations do not apply to HPC providers working with the DODD.

{¶65} For these reasons, and upon our review of the record, we find that Bacon's arguments under her second issue presented for review are without merit.

Third Issue
Deference to Bacon's Physicians' Opinions

{¶66} In her final issue, Bacon contends that the trial court erred in affirming the agency decision because she presented evidence (through written letters and the 485 Plan of Care) that her physicians all agreed she should receive skilled nursing care and her physicians' opinions should have been given "controlling" deference.

{¶67} In a letter dated February 27, 2017, Dr. Timothy D. Freeman wrote:

Ms bacon requires the services of a skilled nurse to assess for illness(in a non verbal, combative patient), monitor vital signs, hydration status and urine issues- has frequent infections.

[*Sic* throughout all letters.]

{¶68} In a letter dated March 9, 2017, Dr. Michael D. Privitera wrote:

Stacy Bacon is a patient under my care for a diagnosis of severe cognitive deficits related to a traumatic brain injury, behavioral problems related to traumatic brain injury and seizures that are medication resistant. In order to address Ms Bacon's health and safety needs, she requires no less than 16 hours of skilled nursing care each day. Do to the severity of this patients condition, please do not send nursing aids or a medical assistance. She will need a skilled nurse only. These services are necessary to manage her behavioral and cognition problems, observe for seizures and observe for adverse effects of medication.

{¶69} In a letter dated March 9, 2017, Dr. Derrick M. Kruger wrote:

Stacy Bacon has been under the care of myself and my colleagues Dr. David Rider (Pedodontist), and Dr. Ryan Harris, (Periodontist), for 8 years for her dental needs. Stacey's overall health is greatly influenced by her care and support she gets daily on her oral health. She has an implant supported bridge from teeth 6-9 which requires daily evaluation and care for both hygiene maintenance and stability. The overall health of her mouth must be maintained daily for any abnormalities, infection and the monitoring of the bridge for any mobility.  It is our recommendation that Stacey continue receiving care from skilled nurses for her health and safety on a daily basis and provide the best oral care for her.

{¶70} In a letter dated May 2, 2017, Dr. Silke Bernert wrote:

Ms. Stacy Bacon was referred to my care for her severe traumatic brain injury resulting in multiple deficits to include cognitive, physical and behavioral impairments. Unfortunately, she also suffers from a seizure disorder that has been medication resistant. The patient requires at least 16 hours of skilled nursing care to address the patient's current medical concerns requiring the ability and training to monitor and respond appropriately to medical emergencies and to manage current medical, physical and behavioral conditions in order to

minimize readmissions to acute care hospitals and prevent threats to her health and life.

{¶71} And in a follow-up letter dated October 3, 2017, Dr. Timothy D. Freeman wrote:

I have been treating Stacey for more than 10 yrs. She is a very complex patient who is s/p traumatic brain injury with frontal lobe syndrome, complex mood disorder , spasticity and choreo athetotic movement disorder. In addition she has epilepsy with partial onset and secondary generalization. We are in the process of adjusting her meds which I anticipate will take upwards of a year. I am need of expert nursing observations during this period because of the complexity of discerning seizure vs movement disorder vs mood issue. I am asking for continue skilled nursing services for this reason

Finally, in Dr. Freeman's 485 Plan of Care, he wrote "[Skilled nursing] approved for 12 hour days 7 days a week."

{¶72} Citing multiple federal and state decisions, Bacon argues that a medical opinion from a treating source must be given, "significant" and "controlling weight."[15] However, the cases cited by Bacon for the proposition of an evidentiary presumption in favor of the treating physician's opinion were premised on 20 C.F.R. 404.1527(c)(2). However, the rule applicable to current claims eliminates deference to a treating physician's opinion.[16] 20 C.F.R. 404.1520c, provides:

We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more

15. Bacon cites *Holman v. Ohio Dept. of Human Servs.*, 143 Ohio App.3d 44, 53-54 (7th Dist.2001), citing *Jones v. Secretary, Health & Human Servs.*, 945 F.2d 1365, 1370 (6th Cir.1991), fn. 7; *Weaver v. Reagen*, 886 F.2d 194, 200 (8th Cir.1989); *Rush v. Parham*, 625 F.2d 1150, 1156 (5th Cir.1980); *A.M.L. v. Dept. of Health, Div. of Health Care Financing*, 863 P.2d 44, 48 (Utah App.1993); *Hummel v. Ohio Dept. of Job & Family Servs.*, 164 Ohio App.3d 776, 2005-Ohio-6651, ¶ 24-44 (6th Dist.); *Gayheart v. Commr. of Social Sec.*, 710 F.3d 365, 376 (6th Cir.2013); and *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984).

16. In revising its rules, the Social Security Administration noted that the evidentiary bias towards deferring to the treating physician's opinion may have influenced treating physicians to favor a finding of disability. Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62560-01, 62573 (proposed Sept. 9, 2016), citing *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir.2006) (noting that a treating physician may bend over backwards to assist a patient in obtaining benefits).

medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

{¶73} With respect to the supportability and consistency factors discussed above, the rule provides:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. 404.1520c(c)(1) and (2).

{¶74} The applicable Ohio regulation for determining whether a service is medically necessary provides:

> the fact that a physician, dentist or other licensed practitioner renders, prescribes, orders, certifies, recommends, approves, or submits a claim for a procedure, item, or service does not, in and of itself make the procedure, item, or service medically necessary and does not guarantee payment for it.

Ohio Adm.Code 5160-1-01(D).

{¶75} Consequently, DODD was not required to give "significant' or "controlling" weight or deference to Bacon's physicians' opinions in determining medical necessity. The doctors' letters were general and summary in nature and were inconsistent with and

unsupported by the evidence submitted at the hearings indicating that most of Bacon's care did not require private duty nursing services, and that many services presently being provided by Bacon's licensed practical nurse could also be performed by a properly certified HPC provider under registered nurse supervision and with nursing task delegation.

{¶76} The evidence submitted over the course of the two state hearings in this matter supports the finding that Bacon's requested 84 weekly hours of private duty nursing services per week were not medically necessary. We find no error on the basis that the agency did not give controlling deference to Bacon's physician opinion letters, and thus we find that Bacon's third issue presented for review is without merit.

{¶77} Based on the above analysis, we find no error in the trial court's decision. Having determined that Bacon's first, second, and third issues presented for review are without merit, we overrule Bacon's second assignment of error.

{¶78} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.