[Cite as *Georgin v. Georgin*, 2022-Ohio-1548.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| RACHEL M. GEORGIN, | : | |
| Appellee, | : | CASE NO. CA2021-09-088 |
| | : | O P I N I O N |
| - vs - | | 5/9/2022 |
| | : | |
| ANDREW E. GEORGIN, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 16DR038892

Tammaro Law LLC, and Kristine L. Tammaro, for appellee.

Croswell & Adams Co., LPA, and Gregory L. Adams, for appellant.

**S. POWELL, P.J.**

{¶1} Appellant, Andrew E. Georgin ("Husband"), appeals from the decision of the Warren County Court of Common Pleas, Domestic Relations Division, sustaining objections to a magistrate's decision filed by his ex-wife, appellee, Rachel M. Georgin ("Wife"), recommending the trial court grant Husband's motion to terminate the parties' shared

parenting agreement and name Husband as the sole residential parent and legal custodian of their son, R.J.G. For the reasons outlined below, we affirm the trial court's decision.

{¶2} On September 8, 2011, Husband and Wife were married in Lebanon, Warren County, Ohio. There was one child born issue of the marriage, a boy, R.J.G., on April 7, 2012. On June 13, 2016, approximately four years after R.J.G.'s birth, Wife filed a complaint for divorce from Husband. Shortly thereafter, on July 5, 2016, Husband filed an answer and counterclaim for divorce from Wife. Several months later, on January 17, 2017, the parties filed a notice informing the trial court that, "after much thought and desire to work together for the best interest of their son," R.J.G., they "agree that shared parenting is in [R.J.G.'s] best interest." A guardian ad litem was then appointed for R.J.G. on March 14, 2017, following which Husband and Wife filed their respective proposed shared parenting plans with the trial court.

{¶3} On June 22, 2017, a one-day final divorce hearing was held before a trial court magistrate. Following this hearing, on June 27, 2017, the magistrate issued a decision recommending the trial court grant Husband and Wife a divorce on the grounds of incompatibility. The magistrate also stated within its decision that Husband and Wife had "entered into an agreement to share parenting of [R.J.G.].," an agreement that the magistrate found to be in R.J.G.'s best interest. The magistrate further stated within its decision that the parties' shared parenting agreement would be the trial court's order and be included in the final divorce decree and decree of shared parenting that was to be filed with the trial court. The final decree of divorce and decree of shared parenting was thereafter filed with the trial court on September 1, 2017.

{¶4} In the years following the divorce, both Husband and Wife filed a variety of postdecree motions with the trial court. Given the sheer number of postdecree motions that Husband and Wife had filed, a two-day hearing was held before a magistrate on June 9,

- 2 -

2020 and October 6, 2020. Following this two-day hearing, on December 3, 2020, the magistrate issued a decision ruling on each of Husband's and Wife's various motions. This included the magistrate recommending the trial court grant Husband's motion to terminate the parties' shared parenting agreement. This also included the magistrate recommending the trial court grant Husband's motion requesting it name him as R.J.G.'s sole residential parent and legal custodian. The magistrate further recommended the trial court leave unchanged Husband's and Wife's parenting time schedule.

{¶5} On December 17, 2020, Wife filed objections to the magistrate's decision. Six days later, on December 23, 2020, Husband filed his own objections to the magistrate's decision. This included one objection in which Husband alleged the magistrate erred by recommending the trial court "continue the existing parenting [time] schedule." Approximately six months later, on June 4, 2021, Wife filed several supplemental objections to the magistrate's decision. As part of her objections, Wife argued the magistrate erred by recommending the trial court grant Husband's motion to terminate the parties' shared parenting agreement. Wife also argued the magistrate erred by recommending the trial court name Husband as R.J.G.'s sole residential parent and legal custodian. This was in addition to Wife's objection to the magistrate recommending the trial court grant Husband's motion to modify child support.

{¶6} On July 15, 2021, the trial court held a hearing on Husband's and Wife's various objections to the magistrate's decision. During this hearing, the trial court heard testimony from both Husband and Wife. Approximately six weeks later, on September 1, 2021, the trial court issued a detailed, 21-page decision ruling on Husband's and Wife's various objections to the magistrate's decision. The trial court specifically titled this decision "RULING ON OBJECTIONS TO MAGISTRATE'S DECISION." In its decision, the trial court explicitly stated that it was sustaining Wife's objection to the magistrate's decision

recommending it grant Husband's motion to terminate the parties' shared parenting agreement. The trial court also explicitly stated that it was sustaining Wife's objection to the magistrate's decision naming Husband as R.J.G.'s sole residential parent and legal custodian. The trial court further stated that the prior child support order was to remain in effect. The trial court was silent as to Husband's and Wife's other objections.

{¶7} Husband now appeals from the trial court's decision, raising the following single assignment of error for review.

{¶8} THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO UNDERTAKE AN INDEPENDENT REVIEW OF AND THEN RULING UPON THE OBJECTED MATTERS.

{¶9} In his single assignment of error, Husband argues the trial court erred by failing to specifically rule on each of his and Mother's various objections to the magistrate's decision. Husband also argues the trial court erred by failing to conduct an independent review of the record to determine whether the magistrate properly determined the factual issues and appropriately applied the law when ruling on the parties' objections to the magistrate's decision. Finding no merit to either of Husband's arguments, we affirm the trial court's decision.

{¶10} Pursuant to Civ.R. 53(D)(4)(d), if one or more objections to a magistrate's decision are timely filed, such as the case here, the trial court "shall rule on those objections." Civ.R. 53(D)(4)(d) also provides that, in ruling on those timely filed objections, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d), therefore, imposes a mandatory duty on the trial court to dispose of a party's timely filed objections to a magistrate's decision. *Lynch v. Lynch*, 12th Dist. Warren No. CA2006-12-145, 2007-Ohio-7083, ¶ 8, citing *Ludwick v. Ludwick*, 12th

Dist. Fayette No. CA2002-08-017, 2003-Ohio-2925, ¶ 5 (Civ.R. 53[D][4][d] "imposes a mandatory duty on the trial court to dispose of a party's objections to a magistrate's decision").

{¶11} The trial court, however, is not required to address each and every portion of an objection to a magistrate's decision raised by a party. *Bacon v. Ohio Dept. of Medicaid*, 12th Dist. Butler No. CA2019-01-017, 2019-Ohio-3226, ¶ 18. The trial court is only required to *rule* on each objection. *Pietrantano v. Pietrantano*, 12th Dist. Warren No. CA2013-01-002, 2013-Ohio-4330, ¶ 20. "A trial court's failure to rule on objections and to conduct an independent review of the magistrate's decision as required by Civ.R. 53(D)(4)(d) constitutes an abuse of discretion." *Bacon v. Ohio Dept. of Medicaid*, 12th Dist. Butler Nos. CA2020-11-112 and CA2020-11-119, 2021-Ohio-4537, ¶ 29, citing *Ohio Bar Liab. Ins. Co. v. CCF Dev., L.L.C.*, 12th Dist. Butler Nos. CA2017-12-170 and CA2017-12-175, 2018-Ohio-3988, ¶ 22. "An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily or unconscionably." *Beucler v. Beucler*, 12th Dist. Brown No. CA2014-05-009, 2015-Ohio-1084, ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} This court presumes the trial court performed an independent review of the magistrate's decision. *Raines v. Hodgson*, 12th Dist. Brown No. CA2019-09-011, 2020-Ohio-3404, ¶ 27. That presumption remains in effect unless the appellant "affirmatively demonstrates" otherwise. *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 93 ("[a]n appellate court 'must presume that a trial court has performed an independent review of the magistrate's recommendations unless the appellant affirmatively demonstrates the contrary'"), quoting *Gilleo v. Gilleo*, 3d Dist. Mercer No. 10-10-07, 2010-Ohio-5191, ¶ 46; *Barrientos v. Barrientos*, 196 Ohio App.3d. 570, 2011-Ohio-5734, ¶ 5 (3d Dist.) ("[t]he appellate court must presume that a trial court has performed an independent

review of the magistrate's recommendations unless the appellant affirmatively demonstrates the contrary"); *Redman v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, ¶ 23 ("[a]bsent facts to the contrary, appellate courts should presume that a trial court conducted an independent analysis when it reviewed a magistrate's decision").

{¶13} This court has set forth several factors that may be relevant when determining whether the trial court has, or has not, conducted an independent review of the record as required by Civ.R. 53(D)(4)(d). These factors include, but are not limited to, consideration of whether the trial court's decision (1) expressly states an objection to the magistrate's decision had been filed; (2) mentions or discusses the merits of the objection to the magistrate's decision; (3) explicitly rules on the objection to the magistrate's decision; and (4) states the trial court had conducted an independent review of the record and the matters that had been objected to. *See Bacon*, 2019-Ohio-3226 at ¶ 20. These factors also include consideration of whether the trial court's decision (5) discusses the evidence contained within the record and (6) provides a legal analysis on the arguments raised within the objection to the magistrate's decision. *Bacon*, 2021-Ohio-4537 at ¶ 35. This is in addition to consideration of whether the trial court (7) held a hearing on the objection to the magistrate's decision, and whether the trial court's decision (8) references any specific portion of the transcript, or any specific exhibit admitted into evidence, when ruling on the objection to the magistrate's decision. *Id.* at ¶ 39; and *Bacon*, 2019-Ohio-3226 at ¶ 20.

{¶14} However, the fact that the trial court does not cite any specific portion of the transcript or to any specific exhibit admitted into evidence in ruling on a party's objection to the magistrate's decision does not, by itself, demonstrate the trial court failed to conduct an independent review of the objected matters as required by Civ.R. 53(D)(4)(d). *See Cottrell*, 2013-Ohio-2397 at ¶ 94 ("the fact that the trial court did not cite to any specific portion of the transcript or any exhibit admitted into evidence in this case in overruling Father's

objections to the magistrate's decision does not demonstrate that the trial court failed to conduct an independent review as to the objected matters as required by Civ.R. 53[D][4][d]"). This is because, "[w]hile citing such material would tend to demonstrate that the trial court conducted the requisite independent review, there is no requirement in Civ.R. 53(D)(4)(d) that the trial court do so." *Hampton v. Hampton*, 12th Dist. Clermont No. CA2007-03-033, 2008-Ohio-868, ¶ 17; *Bacon*, 2021-Ohio-4537 at ¶ 35 ("[r]eference to evidence and legal analysis is not required to demonstrate compliance with Civ.R. 53[D][4][d]"); *Ernsberger v. Ernsberger*, 8th Dist. Cuyahoga No. 100675, 2014-Ohio-4470, ¶ 21 ("the trial court is not required to 'comment or reference' any portion of the record in undertaking its independent review of the record"). That is to say, "simply because a trial court adopted the magistrate's decision does not mean that the court failed to exercise independent judgment." *Pietrantano*, 2013-Ohio-4330 at ¶ 14.

**{¶15}** As noted above, Husband argues the trial court erred by failing to specifically rule on each of his and Wife's various objections to the magistrate's decision. However, while we may agree that the trial court explicitly ruled on only two of Wife's objections, the trial court's silence as to the parties' other objections implies those objections were overruled by the trial court when it proceeded to enter judgment on the objections. *See, e.g., Knop v. Knop*, 11th Dist. Lake No. 2015-L-107, 2016-Ohio-7146, ¶ 60 ("[t]he trial court's silence implies the objection [to the magistrate's decision arguing that because the property was titled to both parties, both parties should share the burden of paying the associated property taxes] was overruled"); *Phillips v. Phillips*, 5th Dist. Stark No. 2014CA00090, 2014-Ohio-5439, ¶ 28 ("[w]hile the trial court never expressly addressed each and every objection, it is presumed that the trial court, sub silentio, overruled the objections when it proceeded to enter judgment disposing of the objections"); *see also Portofe v. Portofe*, 153 Ohio App.3d 207, 2003-Ohio-3469, ¶ 16 (7th Dist.) ("Ohio law is well

- 7 -

established that where the court fails to rule on an objection or motion, it will be presumed that the court overruled the objection or motion"). Therefore, while we believe "it is better practice for a trial court to individually itemize and address objections separately," *Alesso v. Alessio*, 10th Dist. Franklin No. 05AP-988, 2006-Ohio-2447, ¶ 36, the trial court did not err by failing to specifically rule on each of the parties' various objections to the magistrate's decision. Husband's argument otherwise lacks merit.

{¶16} Husband also argues the trial court erred by failing to conduct an independent review of the record to determine whether the magistrate properly determined the factual issues and appropriately applied the law when ruling on the objections to the magistrate's decision. The trial court, however, entered a detailed, 21-page decision ruling on Husband's and Wife's objections. Within those 21 pages, the trial court dedicated the first six-and-one-half pages to the relevant facts divided into five sections. The trial court named those five sections: (1) "Parenting Issues, Round 1, During The Divorce;" (2) "Shared Parenting Plan, Agreed By Both Parents;" (3) "Parenting Issues, Round 2, Soon After Divorce;" (4) "Parenting Issues, Round 3, Less Than A Year Later;" and (5) "The Magistrate's Decision For Round 3."

{¶17} Following the recitation of the relevant facts, the trial court then set forth in the next four pages what it considers to be the trial court's "Core Beliefs." This included the trial court noting on page seven that, "aside from losing a child, divorce may well be the greatest hurt on Earth." This also included the trial court noting on page eight the following:

> In this case, [R.J.G.] has two smart parents who live relatively close to one another. They both agreed to a Shared Parenting Plan where they split time equally with [R.J.G.], which indicates on many levels that there is a degree of trust between one another, and a belief that the other will provide proper care for [R.J.G.] If that were not true, one or both parents would have certainly fought for a different parenting schedule.

{¶18} The trial court then provided a five-page summary of the testimony elicited

from both Husband and Wife at the hearing on their objections to the magistrate's decision. Beginning in the middle of page 16, the trial court then set forth the factors listed in R.C. 3109.04(F)(2) that it must consider when determining whether shared parenting is in a child's best interest. Pursuant to R.C. 3109.04(F)(2)(a) thru (e), these five factors are (1) the ability of the parents to cooperate and make decisions jointly, with respect to the child; (2) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (3) any history or potential for abuse; (4) the geographic proximity of the parents to one another; and (5) the recommendation of the guardian ad litem, if the child has a guardian ad litem.

{¶19} The trial court then analyzed each of these five factors in relation to the facts of this case. This included the trial court finding the following as it relates to the ability of Husband and Wife to cooperate and make decisions jointly, with respect to their son, R.J.G.:

> The parents have not done a good job of cooperating and making decisions jointly, but that reality was contemplated when the parents first entered into their Shared Parenting Plan. That was why they were required to find a co-parenting counselor, to educate both of them on the things they can do and say that will make their relationship better. Fault lies with both parents for not getting the co-parenting counselor. As such, the Court prefers not to engage in a discussion about which parent is more at fault in the problems between them, since it is clear from the testimony that both of them have contributed to those problems.

{¶20} The trial court then noted at the bottom of page 17 that it was also required to consider the so-called "best interest" factors set forth in R.C. 3109.04(F)(1). Pursuant to that statute, these factors include, but are not limited to, (1) the wishes of the child's parents regarding the child's care; (2) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest; (3) the child's adjustment to the child's home, school, and community; (4) the mental and physical health of all persons involved in the situation; (5) the parent more likely to honor and

facilitate court-approved parenting time rights or visitation and companionship rights; and

(6) whether either parent has established a residence, or is planning to establish a

residence, outside of this state. R.C. 3109.04(F)(1)(a), (c) thru (f), and (j).

{¶21} The trial court then analyzed each of those so-called "best interest" factors to

the facts of this case. This included the trial court finding the following as it relates to

Husband's and Wife's wishes regarding R.J.G.'s care:

> Both parents want their bickering to stop. They managed to agree on a co-parenting counselor soon after the Objection hearing on July 15, 2021. Until then, [Husband] wanted the Court to terminate the Shared Parenting Plan and name him as the sole residential parent, as had been recommended by the Magistrate. However, [Wife] wanted to remain as a joint residential parent of [R.J.G.] in the Shared Parenting Plan.

{¶22} Continuing on pages 19 thru 21, the trial court then set forth its legal analysis

and ruling on Husband's and Wife's objections to the magistrate's decision. This includes

the trial court explicitly stating that it was sustaining both (1) Wife's objection to the

magistrate's decision recommending it grant Husband's motion to terminate the parties'

shared parenting agreement and (2) Wife's objection to the magistrate's decision

recommending Husband be named as R.J.G.'s sole residential parent and legal custodian.

In so holding, the trial court specifically stated:

> The parents were in a tug-of-war with one another when this case came before the Court for final divorce hearing on June 22, 2017. Though they agreed to a Shared Parenting Plan for their son, with both parents having equal time, they also agreed on a provision that is rarely, if ever, inserted into a Shared Parenting Plan. They acknowledged that they were so distrustful and at odds with one another that they needed a co-parenting counsel to help them work together. That counselor was supposed to be named within fourteen days of signing the Plan.
>
> However, a counselor was never named. As a result, two parents who very much needed to acquire and practice the necessary skills for effective communication never received that information. Instead, they were left to resort to their old habits

- 10 -

and previous methods, which did not work. It is no wonder their relationship did not get any better. Now, over four years later, the parents * * * are still distrustful of one another, still very over-reactive to the other parent's words and actions, and naturally still unable to engage in healthy discussions with one another.

If the Court were to hear that one parent bears all the fault for the lack of co-parenting counselor, then the Court would be inclined to terminate the Shared Parenting Plan and name the other parent as the sole residential parent. But the Court hears poor excuses from both parents on why that never occurred. * * * Thus, the Court will not terminate the Shared Parenting Plan. The objection is sustained.

The trial court thereafter concluded and stated, "[w]ith the clear understanding that the parents will learn co-parenting principles from the co-parenting counselor and, most importantly, implement those principles, the Shared Parenting Plan shall remain in effect." The trial court found the same with respect to the prior child support order.

{¶23} Given the above, we find it clear that the trial court conducted an independent review of the record to determine whether the magistrate properly determined the factual issues and appropriately applied the law when ruling on Husband's and Wife's objections to the magistrate's decision. This is because, after holding a hearing on the objections, the trial court provided a detailed, 21-page decision setting forth the relevant facts, procedural history, applicable law, and legal analysis that it applied to reach its decision on the objections. Therefore, despite Husband's claim, the trial court did not err by failing to conduct an independent review of the record to determine whether the magistrate properly determined the factual issues and appropriately applied the law when ruling on the objections to the magistrate's decision. Husband's argument otherwise lacks merit.

{¶24} In reaching this decision, although not explicitly argued by Husband within his appellate brief, we find no error in the trial court's decision sustaining Wife's objection to the magistrate's decision recommending it grant Husband's motion to terminate the parties' shared parenting agreement. The same is true as it relates to the trial court's decision

sustaining Wife's objection to the magistrate's decision recommending it name Husband as R.J.G.'s sole residential parent and legal custodian. "As the ultimate factfinder, the trial court judge decides whether the magistrate has properly determined the factual issues and appropriately applied the law, and where the magistrate has failed to do so, the trial court must substitute its judgment for that of the magistrate." *Patridge v. Matthews*, 12th Dist. Brown No. CA2000-04-007, 2001-Ohio-4207, ¶ 5; *Leach v. Leach*, 12th Dist. Butler No. CA2019-06-092, 2020-Ohio-1181, ¶ 11 ("the trial court has the ultimate authority and responsibility over the magistrate's findings and rulings"). Therefore, although not explicitly argued by Husband within his appellate brief, we find no error in the trial court's decision sustaining Wife's objection to the magistrate's decision recommending it grant Husband's motion to terminate the parties' shared parenting agreement. We also find no error in the trial court's decision sustaining Wife's objection to the magistrate's decision recommending it name Husband as R.J.G.'s sole residential parent and legal custodian. Accordingly, finding no merit to any of the arguments raised by Husband herein, Husband's single assignment of error lacks merit and is overruled.

**{¶25}** Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.