[Cite as *W6 Restaurant Group, Ltd. v. Ohio Liquor Control Comm.*, 2022-Ohio-3511.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| W6 Restaurant Group, Ltd., | : | |
| | | |
| Appellant-Appellee/ Cross-Appellant, | : | |
| | : | No. 21AP-407 |
| v. | | (C.P.C. No. 21CV-1013) |
| | : | |
| Ohio Liquor Control Commission, | | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellant/ Cross-Appellee. | : | |

| W6 Restaurant Group, Ltd., | : | |
| | | |
| Appellant-Appellee/ Cross-Appellant, | : | |
| | : | No. 21AP-409 |
| v. | | (C.P.C. No. 21CV-1014) |
| | : | |
| Ohio Liquor Control Commission, | | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellant/ Cross-Appellee. | : | |

| W6 Restaurant Group, Ltd., | : | |
| | | |
| Appellant-Appellee/ Cross-Appellant, | : | |
| | : | No. 21AP-410 |
| v. | | (C.P.C. No. 21CV-1015) |
| | : | |
| Ohio Liquor Control Commission, | | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellant/ Cross-Appellee. | : | |

D E C I S I O N

Rendered on September 30, 2022

**On brief:** *Hastie Law Office*, *L.L.C.*, and *Edward W. Hastie*; *Lewis Brisbois Bisgaard & Smith*, *LL*, and *David A. Campbell*, for W6 Restaurant Group, Ltd. **Argued:** *Edward W. Hastie.*

**On brief:** *Special Counsel to Dave Yost*, Ohio Attorney General, *Tucker Ellis L.L.P.*, *Robert J. Hanna*, *Melissa Z. Kelly*, and *Jeffrey C. Sindelar*, *Jr.*, for Ohio Liquor Control Commission. **Argued:** *Jeffrey C. Sindelar*, *Jr.*

APPEALS from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant/cross-appellee, Ohio Liquor Control Commission ("commission"), appeals from a judgment of the Franklin County Court of Common Pleas affirming in part and reversing in part orders from the commission revoking liquor permits held by appellee/cross-appellant, W6 Restaurant Group, Ltd. ("W6"). For the reasons which follow, we reverse in part and affirm in part the judgment of the common pleas court.

## I. Facts and Procedural History

{¶ 2} W6 operates a bar and restaurant in Cleveland, Ohio known as Barley House. On September 27, 2020, in commission case No. 498-20, the Ohio Department of Public Safety Ohio Investigative Unit ("Investigative Unit") issued a notice of violation to W6 for allowing disorderly activities on its premises, in violation of Ohio Adm.Code 4301:1-1-52. On October 3, 2020, in commission case No. 499-20, the Investigative Unit issued a notice of violation to W6 for allowing disorderly activities on its premises, in violation of Ohio Adm.Code 4301:1-1-52, and for selling alcohol after 10:00 p.m. and allowing consumption of alcohol after 11:00 p.m., in violation of Ohio Adm.Code 4301:1-1-80. On November 14, 2020, in commission case No. 14-21, the Investigative Unit issued a notice of violation to W6 for allowing disorderly activities on its premises, in violation of Ohio Adm.Code 4301:1-1-52. The commission held a hearing on case Nos. 498-20 and 499-20 on November 16, 2020, and held a hearing on case No. 14-21 on January 19, 2021.

{¶ 3} The Ohio Adm.Code 4301:1-1-52 violations at issue in each case concerned Barley House's failure to comply with masking and social distancing requirements in place

during the COVID-19 pandemic.  On March 15, 2020, the Director of the Ohio Department of Health ("ODH") issued an order prohibiting all onsite consumption of food and beverage at bars and restaurants in order to prevent the spread of COVID-19 in Ohio.[1]  On June 5, 2020, the Director of ODH issued the Dine Safe Ohio order, which rescinded the Director's March 15, 2020 order and permitted bars and restaurants to re-open for dine-in service subject to social distancing requirements.  The social distancing requirements in the Dine Safe Ohio order included "maintaining six-foot social distancing for both employees and members of the public when possible," limiting tables to "no more than 10 persons," and requiring customers be seated when consuming food or beverage. (State's Ex. F.) The order obligated businesses to require employees to wear facial coverings and to permit customers to wear facial coverings.  (State's Ex. F.)  ODH also issued a document titled "Responsible Restart Ohio," requiring bars and restaurants to ensure "six feet between parties waiting and when dining" when possible and to have "[c]ustomers and guests * * * wear face coverings at all times, except when dining." (State's Ex. C.)  Investigative Unit Agents Alexa Montesano and Deven Hall testified before the commission's hearing examiner regarding the violation alleged in commission case No. 498-20.  Agent Montesano stated that when she and Agent Hall entered Barley House on September 27, 2020 at approximately 4:25 p.m., she saw "just essentially people everywhere.  There was no social distancing at all. You had to essentially turn sideways to even make your way through the crowd."  (Nov. 16, 2020 Tr. at 59-60.)  Agent Montesano affirmed that groups of people were within six feet of each other and stated that "multiple people" walked by her who were "not wearing masks." (Nov. 16, 2020 Tr. at 61-62.)  Agent Hall stated that Barley House was so crowded on September 27, 2020 the agents "literally were bumping into people.  We were shoulder to shoulder.  We were tapping people to move out of the way." (Nov. 16, 2020 Tr. at 70-71.) Agent Hall observed "several patrons come from the bathroom or go to the bathroom without wearing a mask." (Nov. 16, 2020 Tr. at 71.)

---

[1] Available at
https://content.govdelivery.com/attachments/OHOOD/2020/03/15/file_attachments/1401428/Health%2 0Director%20Order%20Limit%20Food,%20Alcohol%20Sales%20to%20Carry%20Out%20Delivery%20On ly.pdf (accessed September 30, 2020.)

{¶ 4} Lieutenant Ralph Valentino with the Cleveland Police Department, and Agent Andrew Campbell with the Investigative Unit, testified before the hearing examiner regarding the violations alleged in commission case No. 499-20. Lieutenant Valentino explained that he began conducting surveillance on Barley House on October 3, 2020 after receiving a tip that Barley House would be holding an after-hours party. At 10:00 p.m., an undercover officer inside Barley House made his way to a downstairs bar on the permit premises. A Barley House employee was "in control of the door" to the downstairs bar, and the employee was confiscating patrons' cell phones before allowing them to enter the downstairs bar. (Nov. 16, 2020 Tr. at 21.) The undercover officer used marked Cleveland police buy money to purchase alcohol at the downstairs bar after 10:00 p.m.

{¶ 5} Lieutenant Valentino and Agent Campbell entered Barley House at 11:30 p.m. on October 3, 2020. Lieutenant Valentino explained that, when he entered the downstairs bar he saw "a crowded room, people still drinking, serving alcohol at the bar." (Nov. 16, 2020 Tr. at 23.) Agent Campbell explained he entered the downstairs bar and observed "numerous drinks about the bar" with ice in them and "numerous people drinking from beer bottles and plastic cups, consistent with mixed drinks sold at the bar." (Nov. 16, 2020 Tr. at 37-38.) Agent Campbell stated that numerous patrons "were well within -- well within arm's reach of each other" and about half the patrons in the downstairs bar area were "not wearing masks." (Nov. 16, 2020 Tr. at 40-41.)

{¶ 6} Investigative Unit Agent John Phillips testified before the hearing examiner regarding the violation alleged in commission case No. 14-21. Agent Phillips stated that he entered Barley House at 9:55 p.m. on November 14, 2020 and saw "numerous people standing around, drinking, walking around without masks." (Jan. 19, 2021 Tr. at 10.) Agent Phillips stated he did not observe any identifiable six-foot gap between groups of people inside the premises.

{¶ 7} The state offered an affidavit from Dr. Mary Kate Francis ("Francis Affidavit") at both hearings, which contained facts regarding COVID-19 and its transmissibility. The hearing examiner admitted the Francis Affidavit into evidence over W6's objection at each hearing.

**{¶ 8}** The hearing examiner issued reports and recommendations finding the evidence supported the violations as charged in each case. The commission voted to approve the hearing examiner's reports and recommendations, but not the hearing examiner's recommended sanctions. On January 27, 2021, the commission issued orders imposing the following sanctions against W6: in commission case No. 498-20, a 5-day suspension or a $1,000 fine; in commission case No. 499-20, a 20-day suspension or $6,000 fine; and in commission case No. 14-21, revocation of W6's liquor permit. The commission denied W6's motion for reconsideration and W6 appealed each case to the common pleas court.

**{¶ 9}** The common pleas court consolidated the cases and granted W6's motion to stay the order revoking its liquor permit. W6 filed a brief with the common pleas court on June 18, 2021 arguing that it could not be charged with violating Ohio Adm.Code 4301:1-1-52 based on conduct which simply violated a health order. W6 also asserted that: the state submitted "only some contested affidavits from the State's Doctor's" to support the Ohio Adm.Code 4301:1-1-52 violations, that Ohio Adm.Code 4301:1-1-80 and the commission's use of Ohio Adm.Code 4301:1-1-52 violated the separation of powers doctrine, and the commission had violated R.C. 119.03(G) by enforcing Ohio Adm.Code 4301:1-1-52 and 4301:1-1-80. (W6's Trial Court Brief at 2.)

**{¶ 10}** On July 2, 2021, the commission filed a brief with the common pleas court. The commission asserted that "[t]aken together," the provisions of Ohio Adm.Code 4301:1-1-52, R.C. 2917.11, and 2901.01 demonstrated that "under [Ohio Adm.Code 4301:1-1-52], the Commission [could] prohibit a liquor license holder from allowing its patrons and employees to engage in conduct that poses a risk of illness to others on its premises."[2] (Commission's Trial Court Brief at 8-9.) The commission asserted the Francis Affidavit explained how the lack of masking and social distancing at Barley House posed a risk of

---

[2] Ohio Adm.Code 4301:1-1-52(A)(1) defines "[d]isorderly activities" as including any violation of R.C. 2917.11. As relevant herein, R.C. 2917.11 provides that no person shall "recklessly cause inconvenience, annoyance, or alarm to another by * * * [c]reating a condition that * * * presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender." R.C. 2917.11(A)(5); Ohio Adm.Code 4301:1-1-52(A)(1). R.C. 2901.01 defines "[r]isk" as a "significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist," and defines "[p]hysical harm to persons" as "any injury, *illness*, or other physiological impairment, regardless of its gravity or duration." (Emphasis added.) R.C. 2901.01(A)(7), (A)(3).

illness, and further asserted that Ohio Adm.Code 4301:1-1-80 was valid and in effect when W6 was charged with violating Ohio Adm.Code 4301:1-1-80. W6 filed a reply brief on July 9, 2021 with the common pleas court asserting the commission erred by admitting the Francis Affidavit over W6's objection.

{¶ 11} On July 15, 2021, the common pleas court issued a decision affirming in part and reversing in part the commission's orders. The court held that, as Ohio Adm.Code 4301:1-1-65(D) made the Rules of Evidence generally applicable at commission hearings, and the Francis Affidavit was hearsay which was inadmissible under the Rules of Evidence, the commission erred as a matter of law by admitting the Francis Affidavit. As the court found the Francis Affidavit necessary to establish the Ohio Adm.Code 4301:1-1-52 violations, the court reversed the commission's orders with respect to each Ohio Adm.Code 4301:1-1-52 violation. The court found the commission's order with respect to the Ohio Adm.Code 4301:1-1-80 violation supported by reliable, probative, and substantial evidence and in accordance with law.

## II. Assignments of Error

{¶ 12} The commission appeals and assigns the following sole assignment of error for our review:

> The Trial Court erred in holding in its Opinion and Order dated July 15, 2021, that Ohio Adm.Code 4301:1-1-65(D) precluded the Ohio Liquor Control Commission from offering the sworn affidavit of Dr. Mary Francis on the basis that it was hearsay evidence and she was not subject to cross-examination.

{¶ 13} W6 has filed a cross-appeal and assigns the following three assignments of error for our review:

> [I.] The Liquor Control Commission violated O.R.C. Sec. 119.03(G) in enforcing [Ohio Adm.Code 4301:1-1-80]/Curfew against Barley House for Events taking Place on October 3, 2020.

> [II.] The enactment of [Ohio Adm.Code 4301:1-1-80] is in conflict with the "Separation of Powers" doctrine of the Ohio Constitution because it runs in stark contrast to the Legislative intent regarding the hours of operations for D-Class permit holders contained in the Revised Code.

[III.] [Ohio Adm.Code 4301:1-1-80] was illegally applied and enacted because it violates the equal protection and due process clauses of the Ohio Constitution.

## III. Analysis

{¶ 14} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980); *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). Reliable, probative, and substantial evidence has been defined as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Fns. omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 15} The trial court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews* at 280. An appellate court's review of an administrative decision is more limited than that of the common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion in determining whether reliable, probative, and substantial evidence supports the agency's order. *Id.*; *Lorain City School Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio

St.3d 217, 219 (1983).  However, on the question of whether the commission's order was in accordance with the law, an appellate court exercises plenary review.  *Kistler v. Admr., Ohio Bur. of Workers' Comp.*, 10th Dist. No. 04AP-1095, 2006-Ohio-3308, ¶ 9.

### A. Commission's Appeal

{¶ 16} The commission's sole assignment of error asserts the common pleas court erred by finding Ohio Adm.Code 4301:1-1-65 precluded the commission from admitting the Francis Affidavit into evidence.  Without conceding whether Ohio Adm.Code 4301:1-1-52 may be used as a "vehicle for enforcing health orders," W6 acknowledges that the Francis Affidavit was "the only way the State could 'make its case' " under Ohio Adm.Code 4301:1-1-52.  (W6's Appellee's Brief at 10.)

{¶ 17} Dr. Francis was ODH's interim medical director at the time she executed her affidavit on October 22, 2020. Dr. Francis identified the symptoms of COVID-19 and described COVID-19 as a "highly infectious" disease, "spreading easily through respiratory transmission from person-to-person, generally to those within a six-foot radius of the infected person."  (Francis Aff. at ¶ 6.)  Because no vaccine yet existed to protect people against COVID-19 in 2020, Dr. Francis explained that community mitigation strategies, including "social distancing—that is, separating people by at least six feet—and masking," were the "only option[s]" to limit the spread of the virus at that time.  (Francis Aff. at ¶ 16-17.)  Dr. Francis concluded as follows in her affidavit:

> Failure to follow the requirements in ODH Orders creates a condition that presents of physical harm to another person; namely, failure to wear a facial covering while serving food and drink, failure to require patrons to wear masks when patrons are required by law to do so, permitting patrons to gather in groups of greater than 10, and failure to enforce at least a six-foot distance between patrons in lines and seating areas presents a risk that patrons, employees and any who they subsequently may come into close proximity with could contract a potentially physically debilitating disease resulting in hospitalization and even death.

(Francis Aff. at ¶ 19.)

{¶ 18} As Evid.R. 101(A) provides that the Rules of Evidence "govern proceedings in the courts of this state," but not proceedings before administrative agencies, courts

routinely hold that the Rules of Evidence are not directly applicable at administrative hearings. *HealthSouth Corp. v. Testa, Tax Commr.*, 132 Ohio St.3d 55, 2012-Ohio-1871, ¶ 13, citing Evid.R. 101(A) (stating that, as the "rules of evidence, including the hearsay rule, do not control administrative hearings," the agency "was therefore permitted to rely on hearsay"); *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Rev.*, 130 Ohio St.3d 230, 2011-Ohio-3362, ¶ 20 (observing that the "Ohio Rules of Evidence do not directly apply in administrative proceedings"); *Bd. of Edn. for Orange City School Dist. v. Cuyahoga Cty.*, 74 Ohio St.3d 415, 417 (1996) (stating that, because "Evid.R. 101(A) does not mention administrative agencies as forums to which the Rules of Evidence apply," proceedings before the Board of Tax Appeals "need not comply with Evid.R. 703" regarding expert testimony); *Westlake v. Ohio Dept. of Agriculture*, 10th Dist. No. 08AP-71, 2008-Ohio-4422, ¶ 19; *Reynolds v. Ohio State Bd. of Examiners of Nursing Home Admrs.*, 10th Dist. No. 03AP-127, 2003-Ohio-4958, ¶ 19. *See also Hoffman v. State Med. Bd.*, 113 Ohio St.3d 376, 2007-Ohio-2201, ¶ 18 (where an appellant before the state medical board submitted an expert affidavit from "a board-certified anesthesiologist * * *, who stated that, as used in the medical field, the word 'assist' has a technical meaning").

{¶ 19} Notwithstanding Evid.R. 101 and case law interpreting the same as it relates generally to administrative agencies, the commission's Ohio Adm.Code 4301:1-1-65(D) provides that "[i]n all hearings before the commission, and the determination thereon, the production of evidence shall be governed in general by the rules of evidence and burden of proof required by Ohio courts in civil cases." The commission contends that, as Ohio Adm.Code 4301:1-1-65(D) makes the Rules of Evidence only generally applicable at commission hearings, the common pleas court erred by holding that Ohio Adm.Code 4301:1-1-65(D) precluded the commission from admitting hearsay evidence. As an out-of-court statement offered to prove the truth of the matter asserted, the Francis Affidavit constituted hearsay. Evid.R. 801(C). Hearsay is generally inadmissible under the Rules of Evidence. Evid.R. 802. *See Ford Motor Credit Co. v. Ryan & Ryan, Inc.*, 10th Dist. No. 17AP-304, 2018-Ohio-3960, ¶ 30 (stating that "[g]enerally, affidavits are not admissible [in court] because they constitute hearsay").

{¶ 20} The interpretation of administrative rules presents a question of law, to which we apply plenary review. *Burden v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-832, 2012-Ohio-1552, ¶ 17, citing *Longterm Lodging, Inc. v. Ohio Dept. of Human Servs.*, 10th Dist. No. 98AP-1509 (Sept. 30, 1999). Ordinarily, courts accord considerable deference to an agency's interpretation of the rules the agency is charged with administering, so long as the agency's interpretation is reasonable. *Id.* at ¶ 20; *Minges v. Ohio Dept. of Agriculture*, 10th Dist. No. 12AP-738, 2013-Ohio-1808, ¶ 16. Courts interpret administrative rules in the same manner as statutes. *McFee v. Nursing Care Mgt. of Am., Inc.*, 126 Ohio St.3d 183, 2010-Ohio-2744, ¶ 27.

{¶ 21} The primary goal of construing a statute or an administrative rule is to ascertain and give effect to the intent of the rulemaking authority. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11; *State v. Montague*, 4th Dist. No. 12CA25, 2013-Ohio-5505, ¶ 9. Such intent is " 'to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.' " *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, ¶ 15, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. Thus, when interpreting a rule, courts look first to the plain language of the rule, "reading words and phrases in context and construing them according to the rules of grammar and common usage." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, ¶ 21, citing *State ex rel. Rose v. Lorain Cty. Bd. of Elections*, 90 Ohio St.3d 229, 231 (2002); R.C. 1.42. *Accord State ex rel. Baroni v. Colletti*, 130 Ohio St.3d 208, 2011-Ohio-5351, ¶ 18.

{¶ 22} The phrase "in general" is defined as meaning "for the most part." *Merriam-Webster's Collegiate Dictionary* 520 (11th Ed.2014). *See Thomas v. Logue*, 10th Dist. No. 21AP-385, 2022-Ohio-1603, ¶ 15 (observing that "[i]n giving words their common, everyday meaning, it is common for a court to rely on dictionary definitions"). Accordingly, the plain language of Ohio Adm.Code 4301:1-1-65(D) demonstrates that, while the Rules of

Evidence govern the production of evidence at commission hearings for the most part, the Rules of Evidence are not always applicable.[3]

{¶ 23} This court has held that because the commission is "not bound by the strict rules of evidence which are applicable in a court proceeding," hearsay evidence is admissible at hearings before the commission so long as the evidence is "not inherently unreliable and [is] sufficient to constitute substantial, reliable, and probative evidence." *Douglas v. Ohio Liquor Control Comm.*,[4] 10th Dist. No. 11AP-133, 2012-Ohio-2218, ¶ 39, citing *Felice's Main St., Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 01AP-1405, 2002-Ohio-5962, ¶ 17-18. "Therefore, simply because the reports were hearsay does not automatically lead to the conclusion that the commission could not consider them." *Id*. at ¶ 39, citing *Reynolds* at ¶ 19; *Felice's Main St.* at ¶ 17.

{¶ 24} In *Douglas*, we concluded the commission did not err by admitting health department inspection reports, even though the reports "were hearsay evidence" and the "appellant objected to the reports" at the hearing. *Id*. at ¶ 40. We noted that the inspection reports were not inherently unreliable, as they were standard reports issued from the health department and a detective testified that he "regularly saw such reports in the course of his inspection duties." *Id*. at ¶ 41. *Accord Felice's Main St.* at ¶ 18 (holding the commission properly admitted police and administrative investigative reports at its hearing, despite the fact that the reports were hearsay, as there was "nothing inherently unreliable about the reports" and portions of the reports could have been "admissible as an exception to the hearsay rule"); *S. Court St. Ents., Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 13AP-456, 2013-Ohio-5447, ¶ 14, citing *Enitnel, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP-583, 2002-Ohio-7034, ¶ 18 (finding hearsay admissible at the commission's

---

[3] *See Sun City Grand Community Assn. v. Maricopa Cty.*, 216 Ariz. 173, 176-77 (Ct.App.Ariz.2007), quoting *Webster's Ninth New Collegiate Dictionary* 510 (1988) (holding that, as the phrase "in general" in an Arizona statute "reflect[ed] what [was] true 'for the most part,' [the court would] not construe it as comprehensive").

[4] We acknowledge that *Douglas* did not specifically address Ohio Adm.Code 4301:1-1-65, however a review of past versions of Ohio Adm.Code 4301:1-1-65 reveals that the provision of Ohio Adm.Code 4301:1-1-65 indicating that the Rules of Evidence generally govern at commission hearings was in effect at the time *Douglas* was decided.

hearing because "administrative agencies are not bound by the strict rules of evidence applied in court").

{¶ 25} Accordingly, the plain language of Ohio Adm.Code 4301:1-1-65(D) demonstrates that the Rules of Evidence only generally, not strictly, govern at hearings before the commission, and this court has previously held that hearsay evidence is admissible at commission proceedings when the evidence is not inherently unreliable and is sufficient to constitute substantial, reliable, and probative evidence. While the common pleas court determined that Dr. Francis should have been "subject to the rigors of cross-examination," the court never found the statements in the Francis Affidavit inherently unreliable. (Decision at 5-6.) Furthermore, in a footnote, the common pleas court acknowledged that it "may also independently determine whether an affidavit not subject to the rigors of cross-examination constitutes substantial, reliable, and probative evidence."[5] (Decision at 4, fn. 3.) The court, however, did not make such determination. W6 never argued that it was inherently unreliable.

{¶ 26} The common pleas court erred by finding that Ohio Adm.Code 4301:1-1-65(D) precluded the commission from admitting the Francis Affidavit into evidence solely because the affidavit was hearsay.[6] Hearsay evidence may be admissible at commission proceedings when the evidence is not inherently unreliable and is sufficient to constitute reliable, probative, and substantial evidence. W6 neither argues nor cites to anything to show the Francis Affidavit is inherently unreliable. Accordingly, we sustain the commission's sole assignment of error and reverse the common pleas court's ruling on this issue.[7] The case will be remanded to the common pleas court for it to determine in the first

[5] When admitting the affidavit over the objection of W6, the hearing examiner did indicate that she would conduct an assessment of the weight of the affidavit by noting that it "will be given the weight that it deserves." (Tr. at 32, 76.)

[6] In *Scale Entertainment, L.L.C. v. Liquor Control Comm.*, Franklin C.P. No. 20CV-8282 (Oct. 29, 2021), another judge of the Franklin County Court of Common Pleas rejected the argument that Ohio Adm.Code 4301:1-1-65(D) precluded the commission from admitting the Francis Affidavit in a case concerning a permit holder's alleged violation of Ohio Adm.Code 4301:1-1-52. The *Scale* court also recognized that the contents of the Francis Affidavit "could have largely been admitted under Evid.R. 201 recognizing judicial notice of adjudicative facts." (*Scale* Trial Court Decision at 9.)

[7] Because of its evidentiary rule, the common pleas court did not rule "on the constitutional issues and other issues raised by [W6] regarding [Ohio Adm.Code 4301:1-1-52]." (Decision at 6.)

instance whether the Francis Affidavit, combined with the other evidence before the commission, constitutes substantial, reliable, and probative evidence to support the commission's finding of an Ohio Adm.Code 4301:1-1-52 violation, and, ultimately, whether to affirm the commission's orders with respect to each Ohio Adm.Code 4301:1-1-52 violation.

### B. W6's Cross-Appeal

**{¶ 27}** Having sustained the commission's sole assignment of error, we now address the three assignments of error presented by W6 on cross-appeal.

#### 1. R.C. 119.03(G)

**{¶ 28}** W6's first assignment of error asserts the commission violated R.C. 119.03(G) by enforcing Ohio Adm.Code 4301:1-1-80 against Barley House on October 3, 2020. W6 asserts that either the 120-day time limit provided for in R.C. 119.03(G) had expired by October 3, 2020, or that no emergency existed to support passage of Ohio Adm.Code 4301:1-1-80 pursuant to R.C. 119.03(G).

**{¶ 29}** Generally, before an administrative rule may be adopted, amended, or rescinded, an agency must comply with the public notice and public hearing requirements of R.C. 119.03. R.C. 119.03(A) through (D). R.C. 119.03(G)(1) provides an exception to the normal administrative rulemaking process "[i]f the governor, upon the request of an agency, determines that an emergency requires the immediate adoption, amendment, or rescission of a rule." If the governor finds that such an emergency exists, the "governor shall issue an order * * * suspend[ing]" the normal rulemaking procedures and permitting the agency to "adopt immediately the emergency rule." R.C. 119.03(G)(1). A rule enacted pursuant to the emergency rulemaking provisions of R.C. 119.03(G) becomes "invalid at the end of the one hundred twentieth day it is in effect," and an agency may not use R.C. 119.03(G) to "readopt the emergency rule, amendment, or recission." R.C. 119.03(G)(1).

**{¶ 30}** On July 31, 2020, the Governor of Ohio signed Executive Order 2020-30D,[8] finding the COVID-19 pandemic to be an emergency which justified suspension of the normal rulemaking procedures in R.C. 119.03 and permitting the commission to

---

[8] Available at https://governor.ohio.gov/media/executive-orders/executive-order-2020-30d (accessed on September 30, 2022.)

immediately adopt Ohio Adm.Code 4301:1-1-80. Ohio Adm.Code 4301:1-1-80, which the commission enacted on July 31, 2020, provided that liquor permit holders could sell alcohol for on-premises consumption between 5:30 a.m. and 10:00 p.m. and allow on-premises consumption of alcohol from 5:30 a.m. to 11:00 p.m. Ohio Adm.Code 4301:1-1-80(A).

{¶ 31} W6 argues that, because a curfew of some nature restricted W6's ability to serve alcohol for on-premises consumption beginning March 15, 2020, the "clock started running" on the R.C. 119.03(G) 120-day time limit on March 15, 2020. (W6's Cross-Appellant's Brief at 19-20.) As such, W6 contends the 120-day time limit expired well before W6's October 3, 2020 citation for violating Ohio Adm.Code 4301:1-1-80. W6 also asserts that Ohio Adm.Code 4301:1-1-80 was an impermissible readoption of a previously enacted emergency rule. We find no merit to either argument.

{¶ 32} The Director issued the March 15, 2020 order prohibiting all on-premises consumption of food and beverage pursuant to the Director's authority, as stated in R.C. 3701.13, to make orders for preventing the spread of contagious or infectious diseases. On April 7, 2020, the Governor of Ohio signed Executive Order 2020-10D,[9] finding the COVID-19 pandemic to be an emergency which justified suspension of the normal rulemaking procedures and permitting the commission to immediately adopt Ohio Adm.Code 4301:1-1-13. Ohio Adm.Code 4301:1-1-13, which the commission enacted on April 7, 2020, prohibited all permit holders from "selling or furnishing beer or intoxicating liquor for any such on-premises consumption." Ohio Adm.Code 4301:1-1-13(A). Executive Order 2020-30D, which permitted the adoption of Ohio Adm.Code 4301:1-1-80, expressly rescinded Executive Order 2020-10D.

{¶ 33} The Director's March 15, 2020 order came from a different agency and imposed different restrictions than Ohio Adm.Code 4301:1-1-80. Although W6 argues the state "tried to skirt around" the 120-day time limit "by shuffling various on-premises restrictions through various bodies," a business such as Barley House, which serves both food and alcohol, is subject to regulation from both the director of health and the

---

[9] Available at https://governor.ohio.gov/media/executive-orders/executive-order-2020-10d (accessed on September 30, 2022.)

commission.   (W6's Cross-Appellant's Brief at 17.)   *See* R.C. 4301.03 (stating that the commission may adopt rules "providing in detail for the conduct of any retail business" which has a liquor permit); R.C. 3717.04 (providing that the "director of health" has the authority to "adopt rules regarding retail food establishments and food service operations").  The plain language of R.C. 119.03(G), stating that "the emergency rule" will become invalid 120-days after "it is in effect," demonstrates that the 120-day time limit applies only to a singular emergency rule.  Accordingly, for Ohio Adm.Code 4301:1-1-80, the "clock" on the 120-day time limit began to run when the rule became effective on July 31, 2020.[10]  As such, Ohio Adm.Code 4301:1-1-80 was in effect when W6 was charged with violating the rule on October 3, 2020.

{¶ 34} Ohio Adm.Code 4301:1-1-80 also did not readopt a previously enacted emergency rule.  *See Merriam-Webster's Collegiate Dictionary* 17, 1034 (11th Ed.2014) (defining "adopt" as "to accept formally and put into effect," and the prefix "re" as "again : anew").  The March 15, 2020 order from the Director of ODH was not an emergency rule enacted pursuant to R.C. 119.03(G).  Although Ohio Adm.Code 4301:1-1-13 was enacted pursuant to R.C. 119.03(G), Ohio Adm.Code 4301:1-1-13 and 4301:1-1-80 were substantively different rules.  Ohio Adm.Code 4301:1-1-13 prohibited liquor permit holders from serving alcohol for on-premises consumption, while Ohio Adm.Code 4301:1-1-80 permitted the on-premises sale and consumption of alcohol until 10:00 p.m. and 11:00 p.m., respectively.  Accordingly, Ohio Adm.Code 4301:1-1-80 was not a readoption of Ohio Adm.Code 4301:1-1-13.

{¶ 35} Although W6 additionally contends that "a proper emergency did not exist to enact Ohio Adm.Code 4301:1-1-80 under R.C. 119.03(G)" in July 2020, W6 did not raise this argument before the commission or the common pleas court.  (W6's Cross-Appellant's Brief at 23.)  " 'A fundamental rule of appellate review is that an appellate court will not consider any error that could have been, but was not, brought to the trial court's attention.' " *State v. Arega*, 10th Dist. No. 17AP-112, 2017-Ohio-5610, ¶ 9, quoting *Little Forest Med. Ctr. v. Ohio Civil Rights Comm.*, 91 Ohio App.3d 76, 80 (9th Dist.1993).  Accordingly, a

---

[10] Ohio Adm.Code 4301:1-1-80 expired 120 days after July 31, 2020, on November 28, 2020. W6 tacitly acknowledges this fact in its brief, as it states "[w]hen [Ohio Adm.Code 4301:1-1-80] expired in November 2020." (W6's Cross-Appellant's Brief at 24.)

party "waives the right to appeal an issue that could have been but was not raised in earlier proceedings. * * * This principle has been applied in appeals from administrative agencies." *MacConnell v. Ohio Dept. of Commerce*, 10th Dist. No. 04AP-433, 2005-Ohio-1960, ¶ 21, citing *Am. Legion Post 200 v. Ohio Liquor Control Comm.*, 10th Dist. No. 01AP-684 (Dec. 20, 2001). *Accord Etb Corp. v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP-738, 2003-Ohio-589, ¶ 22 (stating that "[h]aving failed to raise the argument at the first available opportunity, appellant waived it"); *1609 Gilsey Invests., Inc. v. Liquor Control Comm.*, 10th Dist. No. 07AP-1069, 2008-Ohio-2795, ¶ 10 (stating that "[e]rrors which are not brought to the attention of the administrative agency by objection or otherwise are waived and may not be raised on appeal"); *Bacon v. Ohio Dept. of Medicaid*, 12th Dist. No. CA2020-11-112, 2021-Ohio-4537, ¶ 60. *Compare Edmands v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-778, 2015-Ohio-2658, ¶ 19. As W6 could have, but did not, raise its argument that no emergency existed in July 2020 in the proceedings below, W6 has waived this argument for purposes of the present appeal.

{¶ 36} Based on the foregoing, W6's first assignment of error is overruled.

### 2. Separation of Powers

{¶ 37} W6's second assignment of error asserts that Ohio Adm.Code 4301:1-1-80 violated the separation of powers doctrine of the Ohio Constitution. The separation of powers doctrine "represents the constitutional diffusion of power within our tripartite government," whereby the legislative power of the state is vested in the General Assembly, the executive power in the Governor, and the judicial power in the courts. *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, at ¶ 114-15, citing Ohio Constitution, Article II, Section 1; Article III, Section 5; Article IV, Section 1. *See State v. Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, ¶ 22. " '[P]owers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments.' " *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, ¶ 44, quoting *State ex rel. Bryant v. Akron Metro. Park Dist. of Summit Cty.*, 120 Ohio St. 464, 473 (1929).

{¶ 38} W6 contends that Ohio Adm.Code 4301:1-1-80 violates the separation of powers doctrine, as the rule conflicts with provisions of the Revised Code describing the hours during which permit holders may sell alcohol. W6 asserts that, as R.C. 4303.16

provides that a D-3a permit holder "may sell intoxicating liquor after one a.m.," the statute suggests the "ability to sell until 1:00 a.m." (W6's Cross-Appellant's Brief at 27.) R.C. 4303.16. As such, W6 contends the General Assembly has demonstrated its intent "to retain authority over hours of sale" and to "set barriers to the Commission's limited powers to regulate the hours of alcohol sales." (W6's Cross-Appellant's Brief at 27.)

{¶ 39} An administrative agency may only promulgate regulations consistent with and predicated upon an express or implicit statutory grant of authority. *DDDJ, Inc. v. Ohio Liquor Control Comm.*, 64 Ohio App.3d 828, 831-32 (10th Dist.1990); *Shell v. Ohio Veterinary Med. Licensing Bd.*, 105 Ohio St.3d 420, 2005-Ohio-2423, ¶ 32. "If an administrative rule exceeds the statutory authority established by the General Assembly, the agency has usurped the legislative function, thereby violating the separation of powers established in the Ohio Constitution." *McFee* at ¶ 24, citing *Burger Brewing Co. v. Thomas*, 42 Ohio St.2d 377, 384-85 (1975). *Accord Midwestern College of Massotherapy v. State Med. Bd.*, 10th Dist. No. 94APE06-863 (Mar. 21, 1995). Accordingly, an administrative "rule which conflicts with a statute is invalid." *Kelly v. Accountancy Bd. of Ohio*, 88 Ohio App.3d 453, 457 (10th Dist.1993), citing *Athens Home Telephone Co. v. Peck*, 158 Ohio St. 557 (1953). *Accord O'Neal v. State*, 10th Dist. No. 19AP-260, 2020-Ohio-506, ¶ 34.

{¶ 40} In construing a grant of administrative power from a legislative body, the intention of the grant of power, and the extent of the grant, must be clear, and, if there is doubt, that doubt must be resolved against the grant of power. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 40. Statutory language " 'must be construed as a whole and given such interpretation as will give effect to every word and clause in it,' " and words in a statute " 'should not be construed to be redundant, nor should any words be ignored.' " *Id.* at ¶ 26, quoting *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 372-73 (1917), and *E. Ohio Gas Co. v. Pub. Util. Comm.*, 39 Ohio St.3d 295, 299 (1988). *See Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12, quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). All statutes relating to the same subject matter must be read in pari materia, and construed together, so as to give the proper

force and effect to each and all such statutes. *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, ¶ 45.

{¶ 41} The Twenty-first Amendment to the U.S. Constitution, ratified in 1933, repealed the Eighteenth Amendment to the U.S. Constitution and ended the era known as Prohibition. The Twenty-first Amendment gave the states the power to regulate alcohol as a commercial article. *See Simms v. Farris*, 840 F.2d 18 (6th Cir.1988), citing *Ziffrin, Inc. v. Reeves, Commr. of Revenue of Kentucky*, 308 U.S. 132, 138 (1939). The General Assembly has acknowledged the authority conferred upon the state of Ohio pursuant to the Twenty-first Amendment, and has exercised its authority to so regulate alcohol through Title 43 of the Revised Code. R.C. 4301.011. Pursuant to R.C. 4301.03, the General Assembly vested the commission with authority to enact regulations "necessary to carry out [Chapter 4301.] and Chapter 4303. of the Revised Code," and specifically delegated to the commission authority to enact regulations "with reference to the hours of the day during which and the persons to whom intoxicating liquor of any class may be sold, and rules with reference to the manner of sale." R.C. 4301.03(I).

{¶ 42} R.C. 4303.16 provides that a D-3a permit may be issued to the holder of a D-3 permit[11] "whenever the holder's place of business is operated after one a.m. and spirituous liquor is sold or consumed after that hour." R.C. 4303.16. The holder of a D-3a permit "may sell spirituous liquor during the same hours as the holders of D-5 permits under this chapter and Chapter 4301. of the Revised Code *or the rules of the liquor control commission.*" (Emphasis added.) R.C. 4303.16. If a D-3a permit holder is also the holder of D-1[12] and D-2[13] permits, the holder "may sell beer" and "may sell intoxicating liquor after one a.m." R.C. 4303.16. R.C. 4303.18 provides that a D-5 permit "may be issued" to a restaurant "to sell beer and any intoxicating liquor at retail * * * for consumption on the

---

[11] R.C. 4303.15 provides that a D-3 permit may be issued to a restaurant "to sell spirituous liquor at retail, * * * for consumption on the premises where sold," and provides that "[n]o sales of intoxicating liquor shall be made by a holder of a D-3 permit after one a.m."

[12] R.C. 4303.13 provides that a D-1 permit "may be issued" to a restaurant "to sell beer at retail either in glass or container, for consumption on the premises where sold."

[13] R.C. 4303.14 provides that the holder of a D-2 permit "may be issued" to a restaurant to "sell cider, wine, and prepared and bottled cocktails, [and] cordials."

premises where sold," and states that the holder of D-3 and D-3a permits "need not obtain a D-5 permit."  R.C. 4303.18.[14] A D-6 permit may be issued to the holder of a D-1, D-2, D-3, D-3a, or D-5 permit to allow sale under that permit on Sunday.  R.C. 4303.182(A).

{¶ 43} The commission enacted Ohio Adm.Code 4301:1-1-49 pursuant to the normal rulemaking procedures of R.C. 119.03.  Ohio Adm.Code 4301:1-1-49 provides that D-3a and D-5 permit holders may not sell, and patrons on their premises may not consume, alcohol from "Monday to Saturday between the hours of two thirty a.m. and five thirty a.m.," and on Sunday "between the hours of two thirty a.m. and Sunday midnight, unless statutorily authorized otherwise."  Ohio Adm.Code 4301:1-1-49(C)(1) and (2).[15]

{¶ 44} As the General Assembly expressly granted the commission authority to regulate the hours during which alcohol may be sold in R.C. 4301.03(I), and Ohio Adm.Code 4301:1-1-80 regulates the hours of sale, the commission promulgated Ohio Adm.Code 4301:1-1-80 pursuant to an express statutory grant of power.  Although R.C. 4303.16 states the holder of a D-3a permit "may sell"[16] alcohol after 1 a.m., the statute also states that a D-3a permit holder "may sell spiritous liquor during the same hours as * * * the rules of the liquor control commission."  R.C. 4303.16.  Accordingly, in R.C. 4303.16 the General Assembly expressly made the hours during which a D-3a permit holder may sell alcohol subject to the rules of the commission.  As the General Assembly has conferred broad authority on the commission to regulate the hours during which alcohol may be sold, Ohio Adm.Code 4301:1-1-80's restriction on the hours of sale does not contravene an express provision of a statute.  *See State ex rel. Navistar Internatl. Transp. Corp. v. Indus. Comm.*, 10th Dist. No. 04AP-638, 2005-Ohio-3284, ¶ 13, quoting *Kelly* at 459 (stating that

---

[14] Pursuant to 2021 S.B. No. 102, effective March 23, 2022, R.C. 4303.18 now also states that a D-5 permit holder "may sell beer and intoxicating liquor from five-thirty a.m. until two-thirty a.m. the following day but shall not sell beer and intoxicating liquor between the hours of two-thirty a.m. and five-thirty a.m. on any day."

[15] W6 asserts in its reply brief that "the use of any rule (i.e. Ohio Adm.Code 4301:1-1-13, Ohio Adm.Code 4301:1-1-80, or Ohio Adm.Code 4301:1-1-49) to prohibit sales prior to" the 1 a.m. time set forth in R.C. 4303.16, "are in conflict with express provisions of the Revised Code." (W6's Cross-Appellant's Reply Brief at 8.)

[16] *See Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971) (stating the "statutory use of the word 'may' is generally construed to make the provision * * * optional, permissive, or discretionary," while use of the word " 'shall' is usually interpreted to make the provision in which it is contained mandatory").

an administrative rule is not " 'inconsistent with a statute unless the rule contravenes or is in derogation of some express provision of the statute' "). *See also* R.C. 4301.22 (providing for restrictions on the sale of alcohol "in addition to those imposed by the rules or orders of the division of liquor control"). As such, Ohio Adm.Code 4301:1-1-80 does not violate the separation of powers doctrine.

{¶ 45} Based on the foregoing, W6's second assignment of error is overruled.

### 3. Equal Protection and Due Process Clauses

{¶ 46} W6's third assignment of error asserts Ohio Adm.Code 4301:1-1-80 violates the Equal Protection and Due Process Clauses of the Ohio Constitution. However, W6 did not raise these constitutional arguments in the proceedings below.

{¶ 47} "As to constitutional issues, when such issues are neither raised at the administrative proceedings nor before the common pleas court, they will not be addressed in the first instance by the court of appeals." *Am. Legion Post 200. See State v. Childs*, 14 Ohio St.2d 56, 62 (1968), citing *State v. Davis*, 1 Ohio St.2d 28 (1964) (holding that "[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time"); *F & F, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 03AP-914, 2004-Ohio-5259, ¶ 24, quoting *Bouquett v. Ohio State Med. Bd.*, 123 Ohio App.3d 466, 474 (10th Dist.1997) (holding that " 'constitutional issues which are not raised in either the administrative proceedings or the common pleas court will not be addressed in the court of appeals in the first instance' "); *Kimberly Entertainment Corp. v. Ohio Liquor Control Comm.*, 10th Dist. No. 96APE05-581 (Nov. 26, 1996); *Dann v. Ohio Elections Comm.*, 10th Dist. No. 11AP-598, 2012-Ohio-2219, ¶ 23.

{¶ 48} As W6 failed to raise the argument that Ohio Adm.Code 4301:1-1-80 violated the Equal Protection or Due Process Clauses of the Ohio Constitution in the proceedings before the commission or the common pleas court, we will not address these arguments for the first time on appeal. W6's third assignment of error is overruled.

## IV. Conclusion

{¶ 49} Having sustained the commission's sole assignment of error, and having overruled W6's three assignments of error on cross-appeal, the judgment of the Franklin

County Court of Common Pleas is affirmed in part and reversed in part, and these cases are remanded to that court for proceedings consistent with law and this decision.

*Judgment affirmed in part*;
*reversed in part*; *and cause remanded.*

LUPER SCHUSTER, P.J., and McGRATH, J., concur.

_____